815 F.2d 80
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clara McLEMORE, Defendant-Appellant.
 No. 86-5492.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1987.
 
 Before KEITH and KENNEDY, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 McLemore, defendant-appellant, seeks review of the District Court's order denying a motion for judgment of acquittal and for a new trial. Defendant raises two issues on appeal: (1) that the District Court abused its discretion in selecting an alternative to the remedies provided for by the Jencks Act; and (2) that the District Court violated the standard enunciated in Brady v. Maryland, 373 U.S. 83 (1963), because it failed to produce, during cross-examination of this witness at defendant's trial, the grand jury testimony given by the government's rebuttal witness during an unrelated investigation.
 
 
 2
 A jury convicted defendant on charges of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846 (1982), with aiding and abetting in the possession with intent to distribute cocaine, 18 U.S.C. Sec. 2, and with possession with intent to distribute cocaine, 21 U.S.C. Sec. 841(a)(1). In 1977 or 1978, defendant met Cardet, who subsequently pled guilty to cocaine trafficking and other charges, in Miami and later began living with him. The couple and their daughter moved to Memphis some time in 1980. In early 1984, the DEA conducted an undercover investigation centering around the drug trafficking activities of Cardet, with whom defendant was still living.
 
 
 3
 A DEA agent named Bachman participated in the undercover operation and testified that he spoke to defendant by telephone, but there was no evidence that Bachman or any other agent spoke to defendant regarding the sale of cocaine. Bachman arranged to purchase one kilogram of cocaine from Cardet. Bachman, Cardet, and another undercover DEA agent met at a restaurant and proceeded to a shopping center parking lot where they pulled up within a few spaces of a Dodge van containing two women, one of whom was defendant. The other woman in the van removed a package from her luggage and handed it to defendant who handed it to Cardet. Cardet gave the package to Bachman and Cardet returned to the van with a small package. Defendant drove the van from the parking lot to a nearby bank where Cardet and defendant had a safe deposit box. Defendant entered the bank and made a deposit in this box and then returned home. A second transaction was arranged, but delayed because Cardet became ill. During this time, Cardet and defendant had conversations with Bachman that were taped and played to the jury regarding this second transaction.
 
 
 4
 Cardet and Bachman arranged for another transaction for two kilograms of cocaine. Cardet and Bachman went to Cardet's home, and Cardet entered the master bedroom and picked up a travel bag. As Cardet and Bachman were leaving the house, defendant apparently came out of the same room from which Cardet had taken the bag, at Cardet's request, to meet Bachman. Bachman also testified that when he and Cardet were getting into the car, defendant told Cardet that she needed something from the bag. She and Cardet returned to the house with the bag and went into the bedroom. Subsequently, Cardet returned to the car with just the package of cocaine. Cardet was later arrested.
 
 
 5
 At defendant's trial, she alleged that she had no actual knowledge that Cardet was a cocaine dealer, or that she was a participant in the drug deals. She admitted to driving the van but denied knowledge of the cocaine transaction. She also testified that she and Cardet moved from Miami to get away from the drug traffic that she knew Cardet to be involved in. On cross-examination, she admitted to having known that Cardet was a drug dealer and to have seen him with large amounts of cocaine and money. She also admitted to having held large amounts of money for Cardet, but contended that she did not know it was drug money, and to have passed the package in the parking lot transaction, which she later admittedly thought at the time was drugs.
 
 
 6
 As a result of defendant's denials that she had actual knowledge that she was a participant in the drug deals, the government called a rebuttal witness, Robert Fragale, a former buyer of drugs from Cardet, to impeach defendant's testimony. Defense counsel sought the criminal record and any Jencks Act[1] statements of Fragale. The government replied that there were no Jencks statements and that Fragale's rap sheet was unavailable. Fragale testified that he knew Cardet and his girlfriend, defendant. He further testified that he obtained cocaine from Cardet on numerous occasions, and that during this time, defendant was living with Cardet. Near the end of Fragale's cross-examination, he told defense counsel that he had testified to these same matters before a Las Vegas grand jury a few years earlier.
 
 
 7
 The Court called a bench conference and defense counsel demanded the prior testimony pursuant to the Jencks Act. The Court concluded that in all probability the grand jury testimony constituted Jencks Act material and that defense counsel was entitled to this material. The prosecutor stated that he had no prior knowledge of Fragale's Las Vegas testimony.[2] After a recess, the prosecutor told the Court and defense counsel that he was sure that no Jencks material existed except possibly the Las Vegas transcript, which was not immediately available. The prosecution, however, did produce Fragale's rap sheet and defense counsel cross-examined him concerning it. The Court denied defense counsel's motion for a mistrial. It determined, however, that defense counsel should proceed with Fragale's cross-examination because the Las Vegas transcript would take about a week to get, but gave defense counsel the option of delaying Fragale's cross-examination until the transcript became available. If defense counsel chose to proceed, the Court stated that he could seek post-trial relief if he believed the testimony to be prejudicial. Defense counsel chose to proceed.
 
 
 8
 Defense counsel received a copy of the Las Vegas transcript and sought a post-trial motion for acquittal or, alternatively, a new trial. Following a hearing on this issue, the Court denied these motions. It found that the prosecution did not intentionally fail to produce this testimony, and that a harmless error standard applied. See Goldberg v. United States, 425 U.S. 94, 111 (1976); United States v. Pope, 574 F.2d 320, 326-27 (6th Cir.), cert. denied, 439 U.S. 868 (1978). Examining Fragale's testimony at defendant's trial and before the grand jury, the Court concluded that defense counsel would have received little if any benefit during his cross-examination of Fragale had counsel possessed this testimony during cross-examination. The Court also concluded that the information in the grand jury testimony was consistent with Fragale's trial testimony. Furthermore, the Court concluded that the case against defendant was strong, and that even without Fragale's testimony, it was highly unlikely that a jury would have found that defendant did not knowingly and intentionally participate in the transactions with which she was charged. Finally, the Court concluded that Las Vegas grand jury material did not constitute Brady material, see Brady v. Maryland, 373 U.S. 83 (1963), because the grand jury testimony was not exculpatory.
 
 
 9
 Defendant on appeal contends that the District Court abused its discretion in selecting an alternative to the remedies contained in subsection (d) of the Jencks Act. Defendant also asserts that the government's failure to produce the grand jury transcript at trial violated Brady.[3] Finally, defendant contends that the government's failure to produce DEA records regarding Fragale's arrest for dealing drugs in Florida violated Jencks and Brady.
 
 
 10
 First, we conclude that the District Court did not violate the Jencks Act by permitting the trial to proceed without the grand jury testimony. This Court, in United States v. Pope, has held that the remedies contained in subsection (d) of the Act[4] are not exclusive and were "not designed to extinguish the normal exercise of discretion by the trial judge where the Act may have been violated by oversight or negligent conduct not amounting to a concious election." 547 F.2d at 325. The standard of review of a trial court's choice of remedies under such a situation is abuse of discretion. Id. The District Court in the present case gave defense counsel the choice of a recess until the transcript became available or proceeding subject to post-trial motions. Defense counsel chose the latter alternative, and the District Court did not abuse its discretion in choosing an alternative to the remedies provided in subsection (d).
 
 
 11
 Furthermore, the District Court did not violate the standards enunciated in Brady. Fragale's grand jury testimony would not have aided defense counsel's attempts to impeach Fragale's testimony. Defense counsel in the present case cross-examined Fragale concerning his past criminal activity and his involvement as a government witness. Additionally, Fragale's grand jury testimony concerned his contacts with Cardet and only mentioned defendant on two occasions. See District of Nevada Grand Jury Testimony of Robert Fragale, July 8, 1981, at 18, 19-20. The questions asked Fragale before the grand jury were not intended to elicit the same information as given at defendant's trial.[5] Additionally, his testimony before the two proceedings was consistent. Fragale testified at defendant's trial that he had told the grand jury about his cocaine transactions with Cardet, and that he mentioned defendant during this testimony but that he could not recount all the particulars. Fragale testified before the grand jury that many of the transactions between himself and Cardet took place at Cardet's home. This was consistent with his testimony at defendant's trial. Thus, we agree with the District Court's conclusion that any benefit defense counsel would have obtained from having Fragale's grand jury testimony during cross-examination was minimal, or perhaps non-existent. Accordingly, the District Court did not abuse its discretion in denying defendant's motions for a judgment of acquittal or a new trial.[6] See United States v. Terry, 729 F.2d 1063, 1067 (6th Cir.1984).
 
 
 12
 Defendant also contends that Jencks and Brady require the production of DEA records concerning Fragale. According to defendant, it is the absence of defendant's name which establishes her lack of knowledge in the present case. Defendant did not raise this issue in her brief in support of her motion for a judgment of acquittal and a new trial, see Joint Appendix at 15-22, and this Court will not consider an issue not raised before the District Court. Wright v. Holbrook, 794 F.2d 1152 (6th Cir.1986).
 
 
 13
 Accordingly, the decision of the District Court is affirmed.
 
 
 
 [1]
 See 18 U.S.C. Sec. 3500 (1982)
 
 
 [2]
 Fragale testified that he did not tell the prosecutor about this Las Vegas testimony before he testified at defendant's trial
 
 
 [3]
 Defendant argues that Fragale's statements before the grand jury and defendant's trial are inconsistent and, because of Fragale's failure to mention defendant except casually, the government's failure to produce this material at trial was extremely prejudicial because it could have aided in defense counsel's cross-examination of Fragale
 
 
 [4]
 Subsection (d) provides in pertinent part: "If the United States elects not to comply with an order of the court ... to deliver to the defendant any such statement, ... the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."
 
 
 [5]
 Thus, not even the absence of references to defendant in Fragale's grand jury testimony exculpates defendant from criminal liability
 
 
 [6]
 The District Court also correctly concluded that Brady did not require the production of the grand jury testimony because this testimony was not exculpatory