822 F.2d 60
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Davidson WILLIAMS, Defendant-Appellant.
 No. 86-5750
 United States Court of Appeals, Sixth Circuit.
 June 30, 1987.
 
 Before ENGEL and BOGGS, Circuit Judges, and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 David Williams appeals his jury conviction for embezzlement and misappropriation of funds and for making false statements to the Veterans Administration in violation of 18 U.S.C. Sec. 1001 and 38 U.S.C. Sec. 3501(a). Williams, an attorney, was appointed legal guardian of the estate of a disabled veteran, Benny Brown, in 1978. In 1982 and 1983, Williams transferred approximately $130,000 from Brown's estate to various accounts in Williams's name. Williams claims that the theft was caused by his manic depression. On appeal, Williams argues that various trial errors prevented him from fully presenting his insanity defense to the jury and deprived him of a fair trial. He also asserts that there is insufficient evidence to support the jury verdict. Williams's claims of error by the trial court are without merit. Williams received a fair trial and presented his insanity defense fully to the jury. The guilty verdict was supported by substantial evidence, and we affirm Williams's conviction.
 
 
 2
 Williams had been a trial lawyer in Tennessee since 1976. His finances began deteriorating in 1979 when he made expensive purchases of automobiles and real estate. His behavior at work and at home became progressively more erratic. He became involved in an extramarital affair and began missing court dates and other appointments. He began siphoning funds from Brown's estate in 1982, but disguised the transactions on the annual accounting statements for the Veterans Administration. The discrepancies were thus not discovered until 1983.
 
 
 3
 Williams was indicted in 1985 and filed a notice of an insanity defense in July 1985. Pursuant to 18 U.S.C. Sec. 4242(a), the court ordered a psychological examination and report. The examination was conducted by Dr. John Hutson, Ph.D., a clinical psychologist. Dr. Hutson interviewed Williams for approximately two and a half hours, administered a Minnesota Multiphasic Personality Inventory, interviewed six of Williams's associates regarding his behavior in 1982 and 1983, and reviewed the prosecution's records. Dr. Hutson concluded that Williams suffered from an affective disorder but that it was not so significant as to impair his ability to appreciate the wrongfulness of his actions or to prevent him from conforming his behavior to the requirements of the law. Dr. Hutson also conferred with a colleague, Dr. Harvey Nissman. Dr. Nissman did not testify at the trial, but Dr. Hutson's report, which referred to the consultation with Dr. Nissman, was made available to Williams prior to trial.
 
 
 4
 The jury trial began on January 14, 1986. Williams presented evidence from experts who diagnosed him as suffering from manic depression. Dr. Sexton, a psychiatrist, treated Williams during his hospitalization after the discovery of the embezzlement in 1983. He diagnosed Williams as manic depressive and prescribed lithium. He testified that reckless spending and failure of morality were signs of manic depression. Dr. Gentry, a clinical psychologist, had also examined Williams during the 1983 hospitalization. He testified that Williams exhibited the classic symptoms of manic depression, including sleeplessness, hyperactivity, sexual indiscretion and reckless spending, and opined that the embezzlement was consistent with the disease. Williams also introduced medical records from the 1983 hospital stay showing a diagnosis of 'probable manic depressive type' from Dr. Oswald, M.D., and a letter from Dr. Bursten, a physchiatrist, diagnosing a bipolar affective disorder.
 
 
 5
 Finally, Williams presented testimony from Dr. McCool, a psychiatrist who had treated him for mental problems in 1968. At that time Williams had been diagnosed as schizophrenic and had undergone electroshock therapy. After consultation with Dr. Sexton, however, Dr. McCool concluded that Williams had been suffering from manic depression during both periods. Dr. McCool testified that the misappropriation of money was not a classic symptom of manic depression, but that it was consistent with the disease.
 
 
 6
 The government expert, Dr. Hutson, diagnosed Williams as suffering from narcissistic personality disorder and opined that Williams's depression was caused by the collapse of his professional reputation after the theft was discovered. Williams attempted to impeach Dr. Hutson with his earlier report to the court which had not used the term 'narcissistic' but had stated that Williams's symptoms were 'indicative of an affective disorder, although there is some question as to whether the more severe bipolar disorder or the less severe cyclothymic disorder is appropriate.'
 
 
 7
 The jury returned a guilty verdict on January 22, 1986 and the trial court denied Williams's motion for a new trial or a judgment of aquittal on February 18, 1986.
 
 
 8
 On April 3, 1986, Williams filed a motion for a new trial based on newly discovered evidence. Williams had finally interviewed Dr. Nissman, the government consultant, and claimed Dr. Nissman had indicated that Williams was impaired as a result of manic depressive bipolar disorder. Williams argues that he had been unfairly misled by Dr. Hutson's report which had stated that Dr. Nissman agreed with Hutson's diagnosis. The report read:
 
 
 9
 It is my opinion that while Mr. Williams does have some psychiatric difficulties and may have had during the time of the alleged offenses, there is no evidence that I can find to indicate significant impairment such as to support a defense of insanity. I have since further conferred with Dr. Nissman regarding this issue of Mr. Williams' [sic] sanity at that time. He concurs in full with the above.
 
 
 10
 The court conducted an evidentiary hearing but denied Williams's motion for a new trial.
 
 
 11
 On June 13, 1986, Williams was sentenced to imprisonment of a year and a day. He filed a timely notice of appeal from the judgment of conviction. Williams argues that he was unfairly misled by Dr. Hutson's report which did not mention narcissistic personality disorder and did not indicate that Dr. Nissman had diagnosed manic depression. Williams argues that he was deprived of his fifth amendment right to due process of law by having to present a prima facie case of insanity before the government's burden of proving every element of the offense, including sanity, was triggered. He also argues that his sixth amendment right to present witnesses in his behalf was violated by Federal Rule of Evidence 704(b), which prevents expert witnesses from testifying as to the ultimate issue of whether a defendant did or did not have the mental state constituting an element of a criminal offense.
 
 
 12
 Williams also claims his sixth amendment rights were violated by the trial court sustaining an objection on surrebuttal of a defense witness. Finally, Williams claims that the jury verdict was not supported by sufficient evidence and that his sentence of a year and a day was excessive and violated the eighth amendment.
 
 
 13
 We find that Williams was not prejudiced by Dr. Hutson's testimony at trial that Williams suffered from a narcissistic personality disorder when his earlier report to the court had not used the term 'narcissistic.' The report had indicated the presence of a personality disorder but had questioned whether that could be considered a psychopathology. Williams did not attempt to contact Dr. Hutson prior to trial to clarify his diagnosis. Furthermore, any inconsistency between Dr. Hutson's report and his testimony at trial could go only to credibility. Williams made full use of the report to impeach Dr. Hutson at trial. Finally, the government's case did not rest on disproving the diagnosis of manic depression, but on proving that Williams's mental disorder, whatever it was, was not serious enough to prevent him from conforming his conduct to the requirements of the law. That ultimate issue was within the province of the jury. The jury decided the question against Williams after hearing extensive expert testimony from both sides.
 
 
 14
 We further hold that Williams was not prejudiced by Dr. Hutson's statement in the report that Dr. Nissman concurred in his diagnosis. Williams argues that the report did not reveal Dr. Nissman's diagnosis of manic depression, thus depriving him of exculpatory evidence within the knowledge of the prosecution and violating his due process rights. Brady v. Maryland, 373 U.S. 83 (1963). Williams's argument is without merit because the prosecution did not suppress any exculpatory evidence. The court report revealed the existence of Dr. Nissman. Williams made no effort prior to trial to contact either Dr. Hutson or Dr. Nissman regarding their diagnoses. Furthermore, Dr. Nissman's diagnosis of manic depression was not exculpatory. The trial court conducted a full evidentiary hearing on Williams's motion for a new trial. Dr. Nissman testified to a diagnosis of probable manic depression, but stated that during 1982 and 1983 Williams knew right from wrong and could conform his conduct to the requirements of the law.
 
 
 15
 Even if the prosecution had suppressed Dr. Nissman's diagnosis, we could not reverse the conviction as the diagnosis was not material. Dr. Nissman's diagnosis of manic depression was not essential to the outcome of the trial, but would merely be cumulative to the other diagnoses of manic depression presented by Williams's experts. 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.' United States v. Agurs, 427 U.S. 97, 109-10 (1976). A reversal is justified only if the undisclosed evidence is constitutionally material in that it 'creates a reasonable doubt that did not otherwise exist.' Id. at 112. Dr. Nissman's cumulative diagnosis of manic depression would not have created a reasonable doubt in the minds of the jury as to Williams's sanity that had not existed after presentation of evidence of manic depression by Williams's experts.
 
 
 16
 Williams's other constitutional arguments are without merit. The government has the burden of proving every element of an offense, including sanity. United States v. Wilson, 629 F.2d 439 (6th Cir. 1980). The burden of persuasion remains with the government at all times. However, the government has the benefit of the legal presumption that all persons are sane until their sanity is called into question. United States v. Hearst, 563 F.2d 1331 (9th Cir. 1977), cert. denied, 435 U.S. 1000. The defendant must make out a prima facie case of insanity to trigger the government's burden of production on sanity. Wilson, 629 F.2d at 441. This initial allocation of the burden of production does not violate the defendant's due process rights.
 
 
 17
 Nor did anything in the trial violate Williams's sixth amendment right to present witnesses on his behalf. Williams argues that this right was violated because F.R.E. 704(b) prevented his expert witnesses from testifying to the ultimate issue of his insanity. He argues that the embezzlement took place before the rule was amended in 1984 and that if he had been tried then his witnesses would have been able to testify to the ultimate issue. The application of F.R.E. 704(b) did not violate Williams's sixth amendment rights. Williams was allowed to present expert testimony on his behalf diagnosing him as manic depressive and detailing the nature and symptoms of the disease. Preserving for the jury the ultimate issue as to whether this disease prevented Williams from conforming his conduct to the law does not violate the sixth amendment. We have held that retroactive application of F.R.E. 704(b) does not violate the ex post facto clause, as the change is only procedural and does not alter the elements of the crime or change the defendant's burden of proof even though it may work to his disadvantage. United States v. Prickett, 790 F.2d 35 (6th Cir. 1986).
 
 
 18
 After Dr. Hutson testified for the government, Williams was granted the opportunity to present surrebuttal testimony from Dr. Gentry on narcissistic personality. When Williams attempted to ask some further questions on manic depression, the court sustained the government's objection that this line of questioning was outside the scope of surrebuttal. Williams's argument that this ruling violated the sixth amendment is frivolous. F.R.E. 611 gives the trial judge control over the mode of interrogating witnesses to make the questioning effective for the ascertainment of truth and to avoid needless waste of time, and provides that cross-examination should be limited to the subject matter of the direct examination unless the court exercises its discretion to allow questioning into additional matters. The court's rulings in this area will be overturned only if this discretion is abused. United States v. Terry, 729 F.2d 1063 (6th Cir. 1984). It was well within the court's discretion in this case to determine that enough evidence on manic depression had already been presented, including Dr. Gentry's testimony on direct examination, and that any further testimony from Dr. Gentry on the subject would merely be cumulative and would serve no useful purpose.
 
 
 19
 Williams also argue that the evidence of insanity was so strong that there was not sufficient evidence to support the jury verdict under Jackson v. Virginia, 443 U.S. 307 (1977). He argues that he presented five experts with a diagnosis of manic depression and impeached the government's contradictory expert, so that the evidence preponderated overwhelmingly for acquittal. Williams's argument is not persuasive. The issue in the case was not whether Williams suffered from manic depression or another disorder, but whether that disease prevented him from conforming his conduct to the law. There was clearly enough evidence presented for the jury to conclude that Williams was capable of conforming his conduct to the law and thus was not insane. We cannot disturb the jury verdict.
 
 
 20
 Finally, Williams contends that his sentence was excessive and violated the eighth amendment. Williams was convicted of four counts of embezzlement, each carrying a penalty of a fine of no more than $2,000, imprisonment for no more than five years, or both, and one count of making false statements to a United States agency, carrying a maximum penalty of a $10,000 fine, imprisonment for five years, or both. In light of the statutorily authorized sentences, Williams's sentence of imprisonment for a year and a day was not excessive.
 
 
 21
 Williams received a fair trial, was allowed to fully present his defense of insanity to the jury, and was convicted by that jury on sufficient evidence. We AFFIRM the judgment of conviction.
 
 
 
 *
 The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation