956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Joseph VALERI, Defendant-Appellant.
 No. 91-5136.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1992.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Convicted of cocaine distribution and possession of firearms, the defendant was sentenced to a lengthy term of imprisonment for each offense pursuant to U.S.S.G. § 4B1.1 and 18 U.S.C. § 924(e). He appeals both the convictions and the sentences. For the reasons stated below, both will be affirmed.
 
 
 2
 * On November 21, 1988, a convicted drug trafficker named Diane Young, working as an undercover informant for the Shelby County, Tennessee, Metro Narcotics Unit, recorded several telephone conversations she had that day with the defendant, Robert Joseph Valeri. In the course of the conversations Ms. Young agreed to buy cocaine from Mr. Valeri. Narcotics Unit officers met Ms. Young at a coffee shop the next day and fitted her with a "wire." One of the officers, Sgt. Lawrence Phelps, searched Ms. Young's clothing, handbag, and vehicle and ascertained that she did not possess any controlled substances. Sgt. Phelps then gave Ms. Young $200 of Narcotics Unit money for a cocaine purchase.
 
 
 3
 Followed by Officer Gene Garrett and other officers, Ms. Young drove to Mr. Valeri's house. The officers set up surveillance and recorded the ensuing conversation, which dealt with a cocaine transaction. With Officer Garrett and other officers following her, Ms. Young then returned to the coffee shop and turned over an eighth of an ounce of suspected cocaine.
 
 
 4
 Ms. Young met with Narcotics Unit officers again on December 8, 1988. She was accompanied by a woman named Francine, who was aware of the undercover operation. Officer Garrett gave Ms. Young $350 of Narcotics Unit money and instructed her to buy more cocaine from Mr. Valeri. Officer Garrett again put a wire on Ms. Young and searched her clothes and her purse and had another officer search her vehicle. (The record is unclear on the extent to which Francine was searched.) Ms. Young then drove to Mr. Valeri's house, accompanied by Francine. The officers followed them, conducted surveillance outside the house, and recorded Ms. Young's conversation with Mr. Valeri. When Ms. Young emerged from the house, the officers followed her back to the coffee shop; there she turned over approximately three grams of suspected cocaine.
 
 
 5
 A few days later Special Agent Bart McIntyre conducted a search of Mr. Valeri's home pursuant to a warrant. The search turned up a Remington Model 1100 twelve gauge shotgun, a Remington Model 870 shotgun, a Remington bolt-action Model 770-LH, a .44 caliber handgun, a revolver, and a bag containing ammunition that would fit some of the weapons.
 
 
 6
 In January of 1989 a federal grand jury handed up an indictment charging Mr. Valeri with two counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1) and one count of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g). The United States filed a notice informing Mr. Valeri and the court of prior convictions on which the United States would rely in seeking enhanced armed career criminal penalties pursuant to 18 U.S.C. § 924(e).
 
 
 7
 The district court granted a motion by Mr. Valeri to sever the trial on the two drug counts from the trial on the firearms count. Both trials resulted in convictions.
 
 
 8
 Based on a series of prior convictions, the district court found that Mr. Valeri was subject to the career offender provisions of the sentencing guidelines as to Counts 1 and 2; as to Count 3, he was found subject to the armed career criminal enhancement provisions of 18 U.S.C. § 924(e). Applying these provisions, the court sentenced Mr. Valeri to three concurrent terms of imprisonment for 210 months, plus three years of supervised release. This appeal followed.
 
 II
 
 9
 The first four assignments of error relate to the trial on the cocaine distribution charges.
 
 
 10
 1. Mr. Valeri argues that the district court erred in denying a motion in limine to exclude from evidence tape recordings and transcripts of his conversations with Ms. Young.[1] The tapes are said to have contained "rough" and "offensive" language that was irrelevant and prejudicial.
 
 
 11
 Mr. Valeri concedes that tape recordings are generally admissible at the discretion of the trial court, see United States v. Robinson, 707 F.2d 872 (6th Cir.1983), but maintains that the court should have redacted those portions of the tapes and transcripts that contained off-color remarks. (The district court listened to the tapes and made separate determinations concerning the admissibility of each one, and Mr. Valeri apparently did not ask the court to edit the tapes at that time.) We must reject Mr. Valeri's argument whether or not the point was properly preserved for appeal; there has been no showing that the district court abused its discretion in allowing use of the unedited tapes and transcripts.
 
 
 12
 2. Mr. Valeri argues next that the district erred when it overruled his objection to Sgt. Phelps' testimony regarding the surveillance of Diane Young. The testimony was as follows:
 
 
 13
 "Q. Directing your attention back to November 22nd after you searched Ms. Young and wired her up, what did you do--how many other people were there with you? How many officers?
 
 
 14
 A. Approximately four or five other officers were with us.
 
 
 15
 Q. And what was the function of those officers?
 
 
 16
 A. We were to maintain a complete surveillance on Ms. Young in her vehicle the whole time she had the wire on.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 Q. After you, after Ms. Young got in her car and you started your surveillance, would you explain to us what happened next?
 
 
 20
 A. We maintained, all four or five officers had separate vehicles and we maintained a constant surveillance on Ms. Young and her vehicle."
 
 
 21
 Mr. Valeri contends that Sgt. Phelps' testimony was inadmissible hearsay because Sgt. Phelps remained in the coffee shop and could not see the other officers during the surveillance. The court permitted the testimony because it found that Sgt. Phelps was testifying to the routine procedure followed by the officers. Fed.R.Evid. 406.
 
 
 22
 Because it was offered to show what actually happened, as opposed to what was supposed to happen, this testimony was probably not covered by Rule 406. After Mr. Valeri's objection was overruled, however, Sgt. Phelps stated that he had known that the other officers were maintaining constant surveillance because they kept him abreast of their situation through radio contact. His testimony was therefore admissible under the present sense impression exception to the hearsay rule. Fed.R.Evid. 803(1).
 
 
 23
 3. Mr. Valeri's next argument is that the district court should have acceded to his request to allow the jurors to mark their transcripts of the tapes of the conversations between Mr. Valeri and Ms. Young. Whether to allow jurors to take notes is a matter committed to the sound discretion of the district court. United States v. Johnson, 584 F.2d 148, 157 (6th Cir.1978), cert. denied, 440 U.S. 918 (1979). Mr. Valeri does not argue, and the record does not show, that there was any abuse of discretion in this respect.
 
 
 24
 4. It is suggested that the district court erred in denying a motion for judgment of acquittal under Fed.R.Crim.P. 29 because Ms. Young could have provided the cocaine herself and staged things to make it appear that she had engaged in drug transactions with Mr. Valeri when in fact she had not. Mr. Valeri was free to argue this scenario to the jury, but a rational trier of fact could obviously have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309 (1979); United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988).
 
 III
 
 25
 During cross-examination, the defense counsel asked Agent McIntyre whether the defendant offered any resistance after the officers entered the house. The following exchange then occurred:
 
 
 26
 "A. That depends on how you want to define 'resistance.'
 
 
 27
 Q. He didn't come at you or try to hit anybody, did he?
 
 
 28
 A. No, ma'am. He tried to destroy evidence, though.
 
 
 29
 Q. He tried to destroy some guns?
 
 
 30
 A. No, ma'am. He tried to destroy some cocaine that he had with him."
 
 
 31
 Defense counsel moved for a mistrial on the basis of this allegedly nonresponsive, improper, and prejudicial testimony. The court denied the motion, but gave a requested curative instruction.
 
 
 32
 This was not a ground for reversal. Agent McIntyre's answers to defense counsel's questions were not altogether unresponsive, and we cannot say that the testimony was so unfair that the court's refusal to grant a mistrial represented an abuse of discretion. See United States v. Atisha, 804 F.2d 920, 926 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987); United States v. Terry, 729 F.2d 1063, 1067 (6th Cir.1984).
 
 IV
 
 33
 We come finally to the enhancement of the defendant's sentences pursuant to the Sentencing Guidelines and 18 U.S.C. § 924(e). Section 4B1.1 of the guidelines provides that a defendant is a career offender if, among other things, he has at least two prior felony convictions for crimes of violence or controlled substance offenses. Mr. Valeri had been convicted of two burglaries in 1968, of bank robbery in 1971, and of armed robbery and voluntary manslaughter in 1972. He argues that the 1971 and 1972 convictions were part a single scheme or plan--and thus should not be counted separately for enhancement purposes--because his crimes were all committed in furtherance of the goals of the Weathermen, an underground revolutionary organization.
 
 
 34
 The argument is frivolous. The crimes were separate offenses that took place on separate dates in separate jurisdictions. That they may have had a common motive is simply irrelevant. United States v. Lowe, 930 F.2d 645, 647-48 (8th Cir.1991); United States v. Rivers, 929 F.2d 136, 139-40 (4th Cir.), cert. denied, 112 S.Ct. 431 (1991).
 
 
 35
 Enhancement of the sentence pursuant to 18 U.S.C. § 924(e) was entirely proper. That section applies to a person convicted under 18 U.S.C. § 922(g) who has three previous convictions for either violent felonies (including burglaries) or serious drug offenses committed on different occasions. Section § 924(e)(1) requires the court to view convictions separately if they arise out of crimes that were "committed on occasions different from one another." Mr. Valeri's two burglary convictions involved separate offenses committed on different dates, so they count as two separate crimes. His bank robberies were also distinct in time, giving him a total of four qualifying prior convictions.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The tapes were introduced into evidence, while the transcripts were provided to aid the jurors while listening to the tapes; the transcripts were not actually received in evidence