**UNITED STATES of America**

**v.**

**Ivan P. NITSCHKE, Defendant.**

**Criminal Action No. 11–138 (JEB).**

United States District Court,
District of Columbia.

Sept. 6, 2011.

David B. Kent, U.S. Attorney's Office, David Adam Last, Office of the United States Attorney for the District of Columbia, Washington, DC, for United States of America.

Jonathan Jeffress, Federal Public Defender, Rosanna M. Taormina, Office of the Federal Public Defender, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

JAMES E. BOASBERG, District Judge.

This case presents the novel question of whether an individual can be charged with using the internet to attempt to persuade or induce a minor to have sex where he merely tells an adult in an online chat that he would like to join him in sex the adult has already pre-arranged with the minor. Here, Defendant Ivan P. Nitschke was arrested on March 24, 2011, after traveling to Washington, D.C., from Alexandria, Virginia, to meet with an undercover Metropolitan Police Department detective. Nitschke traveled into the District following a series of online messages that he and the undercover detective had exchanged, in which the detective invited him to join a threesome with the detective and a fictitious twelve-year-old boy. Defendant was later indicted for attempted persuasion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and travel with intent to engage in illicit sexual conduct, in violation of § 2423(b). Because the Court believes that the undisputed facts in the case cannot support the Government's theory on the first count, it will grant Defendant's Motion to Dismiss Count I.

## I. Background

### A. *Factual Background*

The facts relating to Count I are undisputed, as Defendant has stipulated to their

truth for the purpose of this Motion. On March 24, 2011, Detective Timothy Palchak was acting in an undercover capacity monitoring individuals on a social-networking site. Compl., Statement of Facts at 1 (ECF No. 1–1). According to MPD, this chat room is frequented by individuals who have a sexual interest in prepubescent children. *Id.* Detective Palchak was posing under the screen name "DC Ped." Motion, Exh. B (Detective Palchak's online profile). His profile explained that he was a "No limits perv" who was "into the more pervy and twisted minded, taboo, d/s, yng, etc. . . . ." *Id.* The profile also stated that he was "looking to meet other no limits pervs in DC [and] 1 can usually host." *Id.*

At approximately 11:29 a.m., Nitschke, using the screen name "Tonka," initiated a private chat with Detective Palchak. Statement of Facts at 1; Motion, Exh. A (Chat Transcript) at 2.[1] Defendant wrote, "I like the way you think . . . . taboo, young, etc . . . . party friendly too here . . . . how goes?" Chat Transcript at 2. Detective Palchak responded, "yes, very taboo no limits with exp. . . ." *Id.* at 3. Nitschke then stated, "very hot buddy . . . you looking to get twisted," to which Detective Palchak answered, "yes, getting off at 3 and meeting my lil perv boy that I met over the summer for a few hours. He is young so if that is not your thing we can hook up after he leaves." *Id.* at 4–5. Defendant replied, "hey bud . . . . said I was into that in my first message . . . fuck yeah . . . how old is he? You mind pnp ['party and play,' meaning to use drugs and have sex]?" *Id.* at 6. After Detective Palchak said, "yes, I do pnp he does not turning 13 this year, he is very cool, vers and freaky, to be safe if your interested I would want to hook up before he gets here and play prove we are cool," Nitschke stated, "that works for me buddy . . . . no worries . . . good to meet up before . . . just let me know where and when and I'll be there . . . . two things . . . what you like to pnp with and what does freaky mean exactly (not from states here)? Thanks perv." *Id.* at 7–8. Detective Palchak answered, "no worries, he is into taking piss, and loves to be fucked and bred. Are you a top? vers? once we prove we are cool are you good with fucking his hole with me and breeding his lil hole?" *Id.* at 9. Defendant replied, "top vers here . . . .yeah . . . into all that . . . . ready to join in . . . . what race is he? Oh, you missed the where, when, and pnp questions . . . . thanks." *Id.* at 10.

Detective Palchak then said, "he is white like me. I get off between 230 and 300 he gets her around 4 to 415 or so I do pnp he does not I am in the chinatown area near the verizon center in NW DC. you?" *Id.* at 11. He asked Defendant, "does the work with your schedule?" to which Nitschke responded, "ok cool . . . I'm in Alexandria . . . mobile . . . happy to meet up with you as soon as you're able to. I wouldn't expect him to pnp being young. We meet up before so we can get a little high, play, and get to know each other . . . what do you pnp on?" *Id.* at 12–13. Detective Palchak replied "Sounds good, I like T [methamphetamine] myself, you?" *Id.* at 14. Nitschke then wrote, "yes . . . that works with my schedule . . . and I like to smoke what you suggested and a little Gh is cool too . . . are you a cop or anyone in anyway affiliated with any law inforcement agency?" *Id.* at 15. Detective Palchak responded, "No I am not a cop or any

---

1. The following chat is reproduced without any corrections for spelling or grammar. In addition, the frequent ellipses are in the original chat and do not indicate any omissions. Because the transcript chat is not paginated, all citations correspond to the page numbers listed in ECF.

type of trap organization. Total perv here...." *Id.* at 17. After Detective Palchak asked, "how do you want to keep in touch here or cell phone," Nitschke added, "ok cool .... glad to hear you're not ... cell phone would be ok ... can't give mine out because it's business supplied ....so if you can't either on here would be fine .... and your place is secure to get together at for all of it?" *Id.* at 16, 18. Detective Palchak answered, "yes very secure I will need to meet in front of my apartment building to let you in. 33o would be a safe bet but I will send you a message here when im home." *Id.* at 19.

Detective Palchak then asked Defendant, "are you a cop or trap?" to which he replied, "I am not a cop or a trap .... also just a perv .... you have any good porn we can perv out on when we first meet up?" *Id.* at 22–23. Detective Palchak wrote, "yes I have a lot of 3–12 is that is ok. You have any to bring as well?" and added, "if that is too young I wont play." *Id.* at 24–26. Nitschke responded, "no porn with me .... visiting here and cannot cross borders with that ... 3:30 works for me .... sure...." *Id.* at 27.

Detective Palchak and Nitschke then discussed logistics to meet and communicated as Defendant made his way into the District and to the rendezvous point. *Id.* at 27–46. He told Detective Palchak, "Downtown now ... dependa on traffic only ..." and "Hey ... my blackberry is dying ... can you shoot me an address." *Id.* at 39–43. Defendant's last message asked, "what's the cross street." *Id.* at 46. After arriving at the pre-arranged address, Nitschke was arrested.

### B. *Procedural Background*

Two weeks after his arrest, a grand jury indicted Defendant for (1) Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), and (2) Travel with Intent to Engage in Illicit Sexual Conduct, in violation of § 2423(b). The Indictment also includes a criminal-forfeiture allegation with regard to any property used to commit the alleged offenses. Defendant was arraigned before this Court on May 12, 2011, and entered a plea of not guilty to both counts.

On May 24, Defendant moved to dismiss Count I of the Indictment. In his Motion, Defendant stipulated to all of the facts set out in Section I.A. for the purposes of his Motion. The Federal Public Defender also filed an amicus brief in support of Defendant's Motion on the same day, which the Court accepted. The Government filed its Opposition to the Motion and the FPD's amicus brief on June 6. Four days later, both Defendant and the FPD filed their respective reply briefs.

The Court held a status hearing on June 15 and instructed the Government to file a supplementary pleading by June 29, explaining whether the Government had uncovered any additional facts relevant to Count I or reasonably expected to do so in the future. The Court permitted the Government to make an *ex parte* filing if it so desired. On that day, the Government filed its Supplemental Pleading and an *ex parte* pleading. In the former, the Government informed the Court that it expected to present additional evidence from letters and recorded phone conversations indicating a consciousness of guilt by Nitschke. The Government further stated that it had not yet finished its forensic testing on Defendant's computer and blackberry, but expected to do so by July 31. The Government's *ex parte* submission did not contain new facts relevant to the legal issue in the Motion. Defendant filed a Response to this pleading on July 7 and again stipulated to each new fact from the Supplemental Pleading.

On July 8, the Court held another status hearing, and, following a review of the Supplemental Pleading, the *ex parte* submission, and Defendant's Response, the Court determined that the Government should have until August 4 to submit a further *ex parte* proffer before any decision on the Motion could be made. On that day, the Government filed a Notice of Additional Authority and another *ex parte* submission. Defendant responded to the Government's Notice on August 8, and the Court held a status hearing the next day. After conferring with counsel for the Government in an *ex parte* bench conference during the hearing, the Court informed Defendant that the Government had not finished forensic testing on his blackberry and expected to finish by August 15. The Court, therefore, gave the Government until August 22 to submit any further factual information or potential investigation relevant to Count I.

On August 19, Defendant filed a Notice of Related Authority, to which the Government responded to August 22. The Government, however, did not file a supplemental pleading with additional factual information or mention any further potential investigation. The Court held another status hearing on August 23 and asked the Government if it had any new facts relevant to Count I or expected further investigation to reveal any. The Government indicated that it did not.

## II. Legal Standard

The Court must first determine if it is even proper at this juncture of the case to address the merits of Defendant's Motion. The Government argues that it is impermissibly premature for the Court to do so and that the only appropriate time is during trial under Rule 29. The Court believes that position to be too restrictive.

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The "general issue" is "'evidence relevant to the question of guilt or innocence.'" *United States v. Yakou*, 428 F.3d 241, 246 (D.C.Cir.2005) (quoting *United States v. Ayarza–Garcia*, 819 F.2d 1043, 1048 (11th Cir.1987)). While "[t]here is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context," *id.* (internal citations omitted), our Circuit has upheld the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds where the government failed to object and there were no material facts in dispute. *Id.; see also United States v. Phillips*, 367 F.3d 846, 855 & n. 25 (9th Cir.2004) (holding that district court's determination of pretrial motion to dismiss was appropriate because motion raised pure issue of law to which government did not object); *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir.1994) (recognizing authority of "district court to dismiss charges at the pretrial stage under the limited circumstances where the operative facts are undisputed and the government fails to object"); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir.1992) (upholding district court's pretrial dismissal of indictment where court determined that, based on undisputed facts, government could not prove defendant's intent as a matter of law). *Yakou*, moreover, noted that "[o]ther circuits have recognized that a district court can properly adjudge the sufficiency of the evidence before trial where the government has made a full proffer of evidence or where there is a stipulated record...." 428 F.3d at 247. (citing *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000); *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir.1998)). Only the Elev-

enth Circuit has held that a district court may not assess the sufficiency of the evidence pretrial even where there are undisputed facts. *See United States v. Salman,* 378 F.3d 1266, 1267–69 (11th Cir.2004).

This case is concededly not controlled by *Yakou* because the Government has objected to the Court's consideration of Defendant's Motion before trial. That distinction, however, should not be dispositive. The critical points here are that: (1) Defendant has stipulated to the entire record that is relevant to Count I; (2) the Government has had several opportunities to make a proffer of any additional facts, to conduct any subsequent investigation, and to ask the Court for further delay to seek more evidence; and (3) because the record is limited to the chat, the remaining determination is an entirely legal one.

It would certainly be improper to force the Government in the normal case to proffer its evidence pretrial so that the defense might test its sufficiency. That could, for instance, curtail the Government's ability to obtain additional evidence or locate new witnesses. Yet, here the only relevant evidence is the undisputed transcript. While the Court allowed the Government several opportunities to supplement the record, none of its post-Indictment filings added any new facts that were germane to the legal issue in the Motion—*i.e.,* whether the undisputed facts amount to an attempt to violate § 2422(b).

█ The transcripts themselves provide the Court with all of the relevant undisputed facts to decide the Motion, and a trial will thus not assist the Court in determining whether the Government can prove to a reasonable juror that Defendant's conduct violated § 2422(b). Although the Government insists that the Court should wait until trial, the Court finds that such a delay is unwarranted and would constitute a waste of judicial resources. As another

district court has observed in a similar situation, " '[I]f this is [the Government's] evidence, it would be a directed verdict at the end, and I don't know why I have to sit through two or three weeks while you put on what we know the evidence will be. There doesn't seem to be a dispute of the facts in this case. It's an unusual case in that sense.' " *Levin,* 973 F.2d at 468 n. 1. As this case is similarly unusual, it is ripe for pretrial determination of Defendant's Motion.

### III. Analysis

█ Count I of the Indictment charges Defendant with an attempt to violate § 2422(b). That statute provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

§ 2422(b). The Indictment charges an attempt because, as the Government readily agrees, Nitschke never directly communicated with a minor, and the minor Palchak discussed was purely fictitious.

█ In order to convict Defendant of the crime of attempt, the Government must prove: "(1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which … goes beyond mere preparation." *United States v. Washington,* 106 F.3d 983, 1005 (D.C.Cir.1997) (internal quotations and citations omitted) (alteration in original).

The act in furtherance is often described as a "substantial step" that demonstrates "a true commitment toward completing the crime" and that "the crime will take place unless interrupted by independent circumstances." *United States v. Hofus,* 598 F.3d 1171, 1174 (9th Cir.2010) (internal quotations omitted). "[The substantial step] must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Bailey,* 228 F.3d 637, 640 (6th Cir.2000) (internal citation omitted).

■ In order to prove an attempt to violate § 2422(b), the Government must demonstrate that: "[1] the defendant intended to cause the assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity' ... [and] [2] that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact." *United States v. Lee,* 603 F.3d 904, 914 (11th Cir.2010) (internal citations omitted). Defendant argues that, as a matter of law, the undisputed facts demonstrate that he neither had the requisite intent to entice a minor via the internet nor took a substantial step towards causing the assent of a minor. The Court will address each argument in turn.

### A. *Intent*

The first question the Court must resolve is whether a reasonable juror could find, under the stipulated facts, that Defendant *intended* to persuade or entice a minor in his internet chat.

#### 1. *Intent–to–Persuade Inference*

The Government preliminarily argues that the Court should not even conduct this analysis. Instead, in its Supplemental Brief, the Government argues that, for the

purposes of this Motion, it is entitled to an inference that Defendant intended to persuade a minor to have illicit sex. Such a finding would obviate the Court's need to consider the first "attempt" factor—whether "the defendant 'acted with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting....'" *Washington,* 106 F.3d at 1005 (quoting *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974)). While the Government is certainly entitled to all reasonable inferences based on the undisputed facts here, the Court does not find that it is automatically entitled to this particular inference.

The Sixth Circuit's decision in *Levin* is instructive on this point. The court there upheld the district court's dismissal of an indictment on a 12(b) motion, finding:

> The district court's decision granting defendants' pretrial motion in the instant case constituted a disposition of a legal issue, namely, the ability of the government to prove intent which was an integral element of the ... offense charged in a duly returned indictment after the trial court had considered extrinsic evidence.

973 F.2d at 470. As *Levin* makes clear, the consideration of intent is no different from the consideration of any other element of the offense. Whether a reasonable juror could find that Defendant intended to violate the statute is thus a question of law. If the Court determines that, given the undisputed facts, no reasonable juror could find that Defendant intended to persuade a minor via the internet to have sex, then the Government is not entitled to an inference to the contrary. The Court must thus consider whether a reasonable juror could make such a finding.

## 2. Intent to Persuade

As an initial matter, the parties agree that the intent criminalized by § 2422(b) is the intent to persuade, induce, entice, or coerce a minor, not the intent to have sex with a minor. The Sixth Circuit explained the difference in *Bailey:*

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.

228 F.3d at 639; *see also Lee*, 603 F.3d at 914 (collecting cases from the First, Sixth, Eighth, and Tenth Circuits); *Hofus*, 598 F.3d at 1178 (recognizing, "like numerous other Circuits," distinction between intent to persuade and intent to commit criminal sex act; in prosecution under § 2422(b) an intent to persuade is the requisite intent); *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir.2007) (statute covers "an attempt to achieve the mental act of assent"); *United States v. Brand*, 467 F.3d 179, 202 (2d Cir.2006) ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) (underlying conduct that § 2422(b) criminalizes is the persuasion of minor, rather than sexual act itself). "Section 2422(b) ... was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423 [which criminalizes an intent to engage in illicit sex]." *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir.2011).

The intent to persuade, moreover, must be an intent to persuade using a means of interstate commerce. As the Eleventh Circuit explained, "Combining the definition of attempt with the plain language of § 2422(b), the government must first prove that [defendant], *using the internet,* acted with the specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex." *Murrell*, 368 F.3d at 1286 (emphasis added). The statute thus does not criminalize an intent to persuade at some later point in person. *See United States v. Laureys*, 653 F.3d 27, 39 n. 2 (D.C.Cir.2011) (Brown, J., *dissenting*) ("Had the jury been correctly instructed, it could not reasonably have found Laureys guilty under § 2242(b). Even if Laureys intended at some point in the future to entice the fictitious child herself, there is no evidence Laureys intended to use a facility of interstate commerce to do so.").

Given these legal requirements, the undisputed facts here do not establish an intent to persuade, induce, entice, or coerce a minor using a means of interstate commerce. First, there are no facts that prove—and the government does not even argue—that Defendant intended to *directly* persuade a minor through a means of interstate commerce. As the chat transcripts make clear, Defendant only communicated with Detective Palchak, who never stated or implied that he was anything other than an adult. The question, therefore, is whether Defendant intended to *indirectly* persuade a minor through Palchak. The undisputed facts show he did not.

As discussed below, courts elsewhere have found that a defendant indirectly persuades a minor when he communicates with an adult intermediary with access to a child and in doing so causes or attempts to

cause the assent of the minor. There is little D.C. Circuit law on this issue, although that court recently upheld a § 2422(b) conviction involving an adult intermediary. *See Laureys,* 653 F.3d 27. *Laureys,* however, never squarely addressed the issue presented here. In fact, Laureys himself never even raised the intent-to-persuade issue on appeal, and the majority only mentioned it because Judge Brown had raised it *sua sponte* in dissent. The majority, under a plain-error standard, held that the jury instructions "contradicted no precedents of this Court or the Supreme Court." *Id.* at 32. Ultimately, the Court did not consider "the dissent's interpretation of § 2422(b)" and noted only that other circuits were not plainly erroneous in concluding that a defendant could violate § 2422(b) by communicating with an adult intermediary. *Id.* It is also notable that in *Laureys* the defendant went further than did Nitschke. He "requested photos of the girl, and ultimately asked to be invited over to 'help with the little girl.'" *Id.* at 30. He also pleaded with the adult, "'[Y]ou … NEED to let me hang out with her[,] man.'" *Id.* (alteration in original).

In dissent, Judge Brown explained that she would have overturned Laureys's conviction under § 2422(b) because the jury instructions permitted the jury to convict him if it found that he had only persuaded an adult, and not a minor. *Id.* at 37–38 (Brown, J., *dissenting*). She believed the jury, correctly instructed, could not have convicted Laureys. *Id.* at 39 n. 2. Judge Brown analyzed the difference between persuading an adult, which she found was not covered by the plain language of § 2422(b), and persuading a child, either directly or through an adult intermediary. *Id.* at 39–43. Judge Brown also noted that only one Eleventh Circuit case had concluded that solely persuading an adult was sufficient to violate § 2422(b). *Id.* at 39–

40 (citing *Murrell,* 368 F.3d at 1287). In so doing, she pointed out that a subsequent panel of that circuit in *Lee,* 603 F.3d 904, "hinted *Murrell's* analysis was based on a misreading of the statute." *Id.*

Cases from other circuits that have addressed this issue have all found that the defendant's persuasion must affect the minor, even if indirectly. In other words, the defendant must in essence be asking the adult to persuade the minor, thereby constituting indirect persuasion. *See, e.g., United States v. Berk,* 652 F.3d 132, 140 (1st Cir.2011) ("Section 2422(b) criminalizes an intentional attempt to achieve a mental state—a minor's assent…. The trial court could easily have found that the explicit communications with a person whom Berk thought was the father of a 12–year–old girl about 'renting her out,' along with the concomitant request to see what the girl thought of the idea, were part of an attempt to achieve the requisite mental state in the minor."); *U.S. v. Douglas,* 626 F.3d 161, 162–63 (2d Cir.2010) (defendant told adult intermediary he would provide minor with "sex training" services without harm to minor and also repeatedly promised cash payments in exchange for access); *Lee,* 603 F.3d at 908–17 (court found defendant's communications with adult intermediary were intended to cause daughters to assent to sexual contact with him when he "repeatedly discussed whether, how, and when [the purported mother] would grant Lee sexual access to her daughters," sent adult intermediary graphic photos intended for minor girls, and promised gifts); *United States v. Farley,* 607 F.3d 1294, 1300–06 (11th Cir. 2010) ("Using the internet, [the defendant] made contact with the mother of [the fictitious eleven-year-old child] and set out to persuade her not only to let him have sex with her daughter but also to join him in sexually violating the child"; among other

things, defendant instructed mother to watch pornography with child, and sent photo of his genitals to mother for both mother and daughter to view).

The theory behind these cases is that the defendant's communications through the adult intermediary sought to cause the assent of the minor to the defendant's proposals. The focus is on the intent of the defendant through his communications to influence the child's assent. Given the undisputed facts here, no reasonable juror could find that Defendant intended to cause the minor to assent. For example, Nitschke never sought Detective Palchak's help in procuring the fictitious minor. He did not ask Palchak to pass along any communication whatsoever to the minor. He did not make any promises to the minor through Palchak. He did not offer any money or anything else of value, and he did not invite Palchak or the minor anywhere. These facts are what make this case different.

In fact, when Defendant first asked Palchak to meet, he was not yet aware that Palchak was intending to meet the fictitious minor. *See* Transcript Chat at 3–4 (Defendant asked Palchak if he was "looking to get together to get twisted," to which Palchak responded, "yes, getting off at 3 and meeting my lil perv boy . . . . he is young so if that is not your thing we can hook up after he leaves"). It was only after Nitschke asked to get together with Palchak that the detective brought up the fictitious minor. And while Defendant asked some questions about the minor— *e.g.*, what race he was and whether he liked to "pnp," *see id.* at 4, 9—none of these questions can reasonably be construed as an attempt to persuade either Palchak or the fictitious minor. Ultimately, Palchak asked Defendant if he wanted to join the threesome. Nitschke never himself asked to join; he simply accepted an offer. None of the chats demonstrates anything more than an acceptance to participate in Palchak's pre-existing plan to have sex with the fictitious minor.

The Government argues that the fact that Palchak had preexisting plans is immaterial because those plans did not involve Defendant. *See* Gov't Notice of Add. Authorities at 5. But this argument misses the point. Even if the plans did not originally involve Defendant, there is no evidence that he intended to persuade the minor via the internet to have sex. If there were, the Court would no doubt agree with the Government that § 2422(b) criminalizes a second adult's enticement of a minor via the internet, even where that minor had already been enticed by another adult. There are just no facts to support such a theory here.

An additional factor that distinguishes this case from other indirect-persuasion cases is that there is no evidence that Palchak had any influence or control over the minor. First, Palchak did not claim to be the minor's parent or guardian, which many cases have presumed establishes sufficient influence or control over a minor. *See Murrell*, 368 F.3d at 1287 (negotiating with the purported father); *Lee*, 603 F.3d at 908–17 (purported mother served as adult intermediary); *Farley*, 607 F.3d at 1300–06 (mother was adult intermediary). Second, Palchak did not say anything that indicated that he had any sort of influence or control over the minor. He only told Defendant that he had "met [the minor] over the summer"; the minor did not "pnp"; the minor was white and had not yet turned 13; the minor is "very cool, vers and freaky"; and the minor "is into taking piss, and loves to be fucked and bred." Transcript Chat at 4, 6, 8, 10. There is nothing in these communications to suggest that Defendant would think he

could induce the minor through Palchak's influence or control.

The Government nevertheless argues that "[t]he evidence of the defendant's intent to entice or induce the fictitious minor is made all the more compelling by the fact that the defendant visited an internet chat room that is frequented by individuals who have a sexual interest in prepubescent children and initiated a private email chat with Detective Palchak. . . ." Opp. at 15. The Government adds that "the defendant made clear his interest in the underage boy" and "unequivocally affirmed his interest" as indications of his intent. *Id.* at 16. While these statements certainly demonstrate that Defendant had a sexual interest in minors, they do not demonstrate an intent to entice or induce the fictitious minor via the internet. The Government appears to equate "interest" with "intent to persuade." Simple interest in prepubescent sex—or even an intent to engage in such acts—cannot be enough to establish an intent to persuade.

The Government also maintains that Defendant's intent is "corroborated by his concerns about law enforcement." *Id.* It points to his statements questioning whether Palchak was a police officer, refusing to give out his cell phone, asking if Palchak's place was secure, and stating that he did not have any porn with him because he "cannot cross the border with that." *Id.* (internal citations omitted). These statements, however, in no way corroborate an intent to persuade. At best, they corroborate Nitschke's intent to have sex with a minor without getting caught, a point that Defendant does not dispute for the purposes of this Motion and that the Court has already explained is not the intent targeted by § 2422(b).

Finally, the Government contends that "the defendant expressed a willingness and desire to meet Detective Palchak and the child to engage in sexual activity that same day as soon as possible. . . ." *Id.* at 17. It cites to Nitschke's statement that he was "in Alexandria . . . mobile . . . happy to meet up with you as soon as you're able to" and his statements regarding the logistics while driving to the meeting place. *Id.* (internal citations omitted). The Court agrees that Defendant's communications demonstrate a "willingness and desire to meet," but, once again, a willingness and desire to have sex does not demonstrate an intent to persuade a minor via the internet. There are simply no facts that display anything beyond a "willingness and desire" to join in the preexisting plan to meet the fictitious minor for sex.

Because the Court finds that Defendant's communications do not, as a matter of law, display an intent to persuade, it concludes that a reasonable juror could not find that he attempted to violate § 2422(b).

### B. *Substantial Step*

Not only do the undisputed facts demonstrate a lack of intent to violate § 2422(b), but the Court also finds that Defendant did not take a substantial step in this case because there are no "actual, objective acts that, independent of Defendant's mental state, strongly corroborate and provide unequivocal evidence of his culpability." *United States v. Kaye*, 451 F.Supp.2d 775, 787 (E.D.Va.2006).

■ "To constitute a substantial step, a defendant's 'actions must cross the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances.'" *Goetzke*, 494 F.3d 1231, 1237 (9th Cir.2007) (quoting *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir.1995)). "A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless

frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal." *United States v. Ramirez,* 348 F.3d 1175, 1180 (10th Cir.2003) (quoting *United States v. Smith,* 264 F.3d 1012, 1016 (10th Cir. 2001)). "It must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *Bailey,* 228 F.3d at 640 (quoting *United States v. Manley,* 632 F.2d 978, 987–88 (2d Cir.1980)). A substantial step towards violating § 2422(b) must necessarily be a step towards persuading, enticing, inducing, or coercing a minor via a means of interstate commerce. *United States v. Farhane,* 634 F.3d 127, 148 (2d Cir.2011) ("[I]mportant to a substantial-step assessment is an understanding of the underlying conduct proscribed by the crime being attempted.").

The Government here argues that Defendant has committed at least two substantial steps. First, the Government contends that "[t]he defendant's attempted enticement occurred based on his communications with Detective Palchak about the sexual acts he wanted to commit with the minor boy, and arrangements for a time and place of meeting later that day." Opp. at 22. Second, the Government argues that "[t]he fact that the defendant actually traveled to the meeting location . . . also constituted a 'substantial step' towards completion of the crime." *Id.* Neither of these arguments holds water.

■ The same reasoning applied to Nitschke's intent in Section III.A.2 holds true for the substantial-step analysis. As explained there, no evidence exists that Nitschke intended to persuade the ficti-tious minor via the internet, either directly or indirectly. In looking at his communications by themselves, there is similarly nothing to show a substantial step in enticing a minor. To the extent the Government is arguing that a substantial step is achieved by arranging a face-to-face meeting for the purpose of subsequent persuasion, it is incorrect. Later face-to-face persuasion, as explained above, is not criminalized under § 2422(b); accordingly, arranging to meet for such persuasion cannot be a substantial step either.

Travel, moreover, is not sufficient to establish a substantial step. As a threshold matter, the substantial step must be necessary to the commission of the crime. *Bailey,* 228 F.3d at 640 (citing *Manley,* 632 F.2d at 987–88). There is no doubt that travel is not necessary to violate § 2422(b); indeed, as discussed above, a person could be guilty of persuading without leaving his home. *See Goetzke,* 494 F.3d at 1236 (travel not necessary for § 2422(b) offense and collecting cases); *Murrell,* 368 F.3d at 1286 ("if a person *persuaded* a minor to engage in sexual conduct (e.g., with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b)") (emphasis in original); *Bailey,* 228 F.3d 637 (sufficient evidence of substantial step in enticement offense where defendant sent emails to minors proposing oral sex but did not ever travel to meet girl).

The Government nonetheless points to several cases that have suggested that travel may constitute a substantial step in violating § 2422(b). *See Hofus,* 598 F.3d at 1175 (exchange of communications and additional step of traveling to prearranged meeting place is "substantial step"); *Brand,* 467 F.3d at 202–04 (sexually explicit conversations, arranging meeting, and travel to prearranged meeting place sufficient evidence of substantial step); *United*

*States v. Meek*, 366 F.3d 705, 720 (9th Cir.2004) (online sexual dialog and travel to meet the minor at a local school sufficient substantial step); *United States v. Root*, 296 F.3d 1222, 1228 (11th Cir.2002) (defendant took "substantial step" by sending instant messages to fictitious minor with proposed sexual acts and drove five hours from Georgia to North Carolina to meet minor at appointed time and place); *Kaye*, 451 F.Supp.2d at 787 (stating that courts have found a substantial step where facts demonstrated "(1) sexual dialog between [the d]efendant and the 'minor;' (2) repeated references to what would be performed upon meeting the minor; (3) the transmission of a sexually suggestive photograph; and (4) travel by [the d]efendant to meet the minor" and that "any [of these facts] would likely be sufficient by themselves to constitute a substantial step").

 The analysis of the travel in these cases is neither binding on this Court nor persuasive. First, only *Kaye* suggests that travel by itself may constitute a substantial step, but that court never actually had to so decide. 451 F.Supp.2d at 787 (finding all four factual scenarios present). In fact, every case cited by the Government included communications that evidenced the defendant's attempt to persuade. Second, and more fundamentally, travel ultimately has nothing to do with this crime. A § 2422(b) violation occurs, if at all, before any travel is undertaken; indeed, no travel is even necessary. The crime is complete with the persuasion or attempted persuasion, both of which are necessarily confined to the interstate communications between a defendant and the minor or an adult intermediary. Travel for a face-to-face meeting thus cannot be a substantial step because such face-to-face persuasion is not criminalized.

As the Court finds that the undisputed facts demonstrate, as a matter of law, that Defendant did not take a substantial step towards violating § 2422(b), he could not have attempted to violate that statute.

## IV. Conclusion

Because the Court concludes that Defendant, as a matter of law, did not attempt to violate § 2422(b), the Court ORDERS that:

1. Defendant's Motion is GRANTED; and

2. Count I is DISMISSED WITH PREJUDICE.

**SO ORDERED.**