**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Ray TERRY, Gordon Lynn
Peeler, Defendants-Appellants.**

Nos. 83–5280, 83–5281.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1983.

Decided March 16, 1984.

Rehearing Denied April 18, 1984.

Don W. Poole, Chattanooga, Tenn., for defendants-appellants in No. 83–5281.

Michael S. Prichard, Chattanooga, Tenn., for defendants-appellants in No. 83–5280.

John W. Gill, Jr., U.S. Atty., Charles Fels, Asst. U.S. Atty. (argued), Knoxville, Tenn., for plaintiff-appellee.

Before ENGEL and CONTIE, Circuit Judges, and GIBSON, Senior Circuit Judge.*

FLOYD R. GIBSON, Senior Circuit Judge.

The defendants appeal from a criminal conviction and judgment entered by the district court.[1] We affirm.

---

\* Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The Honorable Henry R. Wilhoit, Jr., United States District Court for the Eastern District of Kentucky; sitting by designation, Eastern District of Tennessee, Southern Division.

## I.

Defendants James Ray Terry and Gordon Lynn Peeler were convicted by a jury of conspiring to conceal a stolen truck which had moved in interstate commerce and was worth $5,000 or more, in violation of 18 U.S.C. §§ 2, 371 and 2313. The defendants were also convicted of conspiring to receive and conceal a stolen diesel engine which had moved in interstate commerce and was worth $5,000 or more, in violation of 18 U.S.C. §§ 2, 371 and 2315. The bulk of the evidence against the defendants came via a confederate of theirs, Eddie Harrill, who had agreed to be a witness for the government in exchange for a recommendation of leniency. Harrill had tape-recorded conversations between himself and each of the defendants, during which both defendants made self-incriminating remarks. An undercover government agent was present when Harrill had, and recorded, the conversation with Peeler. Neither Terry nor Peeler testified at trial. Both defendants appeal, alleging that errors which occurred at trial warrant reversal.

## II.

### (1) The motions in limine.

Prior to trial, both Peeler and Terry made motions in limine to suppress evidence of prior convictions in the event that either defendant might choose to testify at trial. The trial court denied these motions. Neither Terry nor Peeler testified at trial and their prior convictions were not introduced into evidence at trial. Neither defendant stated what his testimony would have been had the motion in limine been granted.

■ For various reasons, both Peeler and Terry argue that the trial court's ruling was erroneous. We do not reach the issue. In the recent decision of *United States v. Luce*, 713 F.2d 1236, 1238 (6th Cir.1983), this court held that a preliminary ruling on admissibility is not reviewable on appeal when a defendant fails to testify at trial and prior convictions are not offered into evidence by the prosecution. Pursuant to *Luce*, we dismiss the defendants' arguments regarding the motions in limine.

### (2) The value of the stolen engine.

■ Peeler and Terry argue that the government failed to prove the value of the stolen diesel engine. Under Title 18 U.S.C. § 2315, the stolen goods must have a threshold value of $5,000 at the time and place of taking.[2] *Stern v. United States*, 204 F.2d 647, 649 (6th Cir.1953). The value of the property is a question of fact to be determined by a jury. *See United States v. Williams*, 657 F.2d 199, 202 (8th Cir. 1981); *Kowalchuk v. United States*, 176 F.2d 873, 876 (6th Cir.1949). On appeal from a criminal conviction, this court views the evidence in the light most favorable to the government when determining whether the jury's finding was supported by substantial and competent evidence. *Kowalchuk*, 176 F.2d at 876.

■ The government adduced evidence that the value of the stolen engine, prior to its theft, was between eight and ten thousand dollars and that the current value of the engine was between six and eight thousand dollars. Also, the government's principal witness, Harrill, testified that he had agreed to give Peeler five thousand dollars plus an old engine if Peeler put the stolen engine in Harrill's truck. Witnesses for the defense, neither of whom inspected the engine, testified that the value of the engine would be between twenty-five and thirty-five hundred dollars. We hold that the jury's finding is supported by substantial and competent evidence.

### (3) The trial court's denials of the motions to re-open the case and grant a new trial.

On the third day of trial, after both sides had rested, the government learned that

---

**2.** 18 U.S.C. § 2315 provides in pertinent part: Whoever receives, conceals, stores ... or disposes of any goods ... of the value of $5,000 or more ... moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted or taken ... [s]hall be fined not more than $10,000 or imprisoned not more than 10 years, or both.

Harrill had come to the courthouse that day in the company of a fugitive and in a truck which had been equipped with stolen parts. The government, in an *in camera* hearing, brought this to the attention of the court and defense attorneys. Both defense attorneys made motions to re-open their cases for the purpose of recalling and discrediting Harrill. The trial court denied these motions.

Harrill subsequently was indicted on, and pled guilty to, the charge of concealing stolen goods. Defendants moved for a new trial on the basis that Harrill's continued criminal involvement constituted newly discovered evidence. The motions were denied.

During his testimony, Harrill had stated that he agreed to become a government witness because he wanted to come clean. He also testified that he had told the grand jury everything about his criminal activities. However, as the subsequent prosecution revealed, Harrill had been involved in criminal activity up to and including the week before he testified at the defendant's trial.

*Fed.R.Evid.* 611 provides in pertinent part:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time . . . .

■ Under Rule 611, a trial judge has considerable discretion and a judge's rulings will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 611[01] at 611–15.

On cross-examination, both defendants extensively impeached Harrill's direct testimony. In the course of his testimony, Harrill admitted to involvement in numerous criminal activities as well as five prior convictions. He also admitted to entering into an agreement with the government in exchange for the government's recommendation of leniency on pending state and federal charges. Finally, on cross-examination, the government agent who had dealt with Harrill testified that he was aware Harrill was a thief.

■ No purpose would have been served by recalling Harrill for further impeachment; he had already been discredited. We hold that the trial court's denials of the motions to reopen the case were not an abuse of discretion.

■ Regarding the denials of the motions for new trials, under *Fed.R.Crim.P.* 33, a trial court may grant a defendant's motion for a new trial if the interests of justice so require. However, these motions are to be addressed to the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of that discretion. *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304, (1983). Under the *Barlow* test, to obtain "a new trial based on newly discovered evidence a defendant must show that the evidence (1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried." *Id.*

■ Peeler and Terry fail to meet the last two prongs of this test. Given the substantial evidence adduced against both defendants at trial, it is not likely that further discrediting of Harrill would produce an acquittal if the case was retried. Further, Harrill's continued criminal activity was not material to the issue of the defendants' guilt, and the evidence would have been cumulative as it only could have served the purpose of further impeachment.

### (4) Admissibility of the tape recorded conversations.

At trial, the government introduced into evidence two tape recorded conversations.

One tape contained a conversation between Peeler and Harrill, and the other contained a conversation between Terry and Harrill. Both defendants had made self-incriminating remarks about their involvement in the crimes for which they were prosecuted. The conversations occurred after Harrill had agreed to cooperate with the government. Both defendants object to the admission of the recordings, albeit for different reasons.

Most of Peeler's objections go to the content of the tape. Those objections will be discussed below. Peeler's objection to the tape, *per se*, concerns a portion of the tape which Peeler claims was inaudible. In *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir.1983) this court noted:

> It is well settled that the admission of tape recordings at trial rests within the sound discretion of the trial court .... That discretion presumes, as a prerequisite to admission that the tapes be authentic, accurate and trustworthy .... Moreover, they must be audible and sufficiently comprehensible for the jury to consider the contents ....

*Robinson,* further held that where:

> there are inaudible portions of the tape, the court should direct the deletion of the unreliable portion of the transcript. This, however, assumes that the court has predetermined that unintelligible portions of the tape do not render the whole recording untrustworthy.

*Id.* at 879.

■ The trial court met the standards set out in *Robinson.* The record shows that, at a pre-trial hearing, the trial court listened to the questionable portion of the tape and ordered that the part which was inaudible be deleted. The trial court found that the remainder of the questionable portion of the tape was audible. Our review of the transcript produced from the Peeler tape leads us to agree. The admission of the Peeler tape into evidence did not constitute an abuse of discretion.

Terry argues that there are four problems which render the tape of his conversation with Harrill inadmissible: (1) the tape is inaudible; (2) the tape was stopped during the course of the conversation and then restarted; (3) Terry's statements were not voluntary because they were responses to leading questions asked by Harrill and; (4) the parties speaking for the first few minutes of the tape, and for the first ten pages of the transcript produced from the tape, were not identified.

Terry's allegation that the tape was inadmissible because it was inaudible is without merit. We have reviewed the transcript produced from the tape and included in the record. Our review leads us to conclude that the tape was not so inaudible as to render it untrustworthy. *Robinson,* 707 F.2d at 876.

■ During a pre-trial hearing the court ruled that the government would be allowed to produce an explanation, through Harrill, as to why the tape recorder had been stopped and restarted. If there was any evidence, at that time, that the government had tampered with the tape, the trial court warned that the evidence would be suppressed. During trial, Harrill offered an explanation as to the interruption in the tape. Defense counsel had the opportunity to cross-examine Harrill on this point. In addition, the trial judge questioned Harrill on this point. The trial court determined that the government had not tampered with the. tape in any way. There was no evidence to the contrary. Where a criminal defendant fails to demonstrate that an alleged inaccuracy contributed to his or her conviction, any error which occurred is regarded as harmless. *United States v. Smith,* 537 F.2d 862, 863–64 (6th Cir.1976).

Terry's contention that his responses were not voluntary because Harrill's questions were leading simply has no merit. There was no evidence of duress or coercion and it cannot be contended seriously that the form of the question determines the voluntariness of the response.

■ Terry's final contention, that the tape was inadmissible because the speakers on a portion of the tape were unidentified, is not properly before this

court. During trial, the court offered Terry the opportunity to object to the questionable portion of the tape, and to strike that portion from the tape and transcript. Terry declined, opting to have the entire tape introduced into evidence. A defendant is required to object to the action of the trial court in order to preserve an alleged error for appellate review. *United States v. Feroni,* 655 F.2d 707, 712 (6th Cir.1981); *Fed.R.Crim.P.* 51.

### (5) Evidence of defendants' previous criminal activity.

At trial, there were five instances in which reference to each defendant's previous criminal activity was made. The defendants argue that these references constitute a basis for reversal.

As noted, the tape recorded conversation between Peeler and Harrill was introduced into evidence. During the course of that conversation, Peeler incriminated himself in relation to the charges for which he was prosecuted, and also made several references to his involvement in other criminal activity. Peeler had discussed "cut jobs", i.e., dismantling stolen trucks, "obtaining papers", i.e., titles for stolen vehicles, other stolen engines, being nervous about getting arrested, defrauding insurance companies with regard to vehicles, and his willingness to do cut jobs for Harrill. Peeler did not request a cautionary instruction to the jury on their use of this evidence.

During cross-examination of a defense witness, LeBron Davis, the government asked about Davis' past association with Peeler. The questioning revolved around the explosion of Davis' boat, for which he had collected insurance.

During the government's direct examination of a police officer, the officer—in one fell swoop—made direct reference to the fact that Peeler had a prior conviction, consorted with felons and was on parole. This same officer, during cross-examination by Terry, indicated that he may have had occasion to visit Terry's place of employment during other, unrelated investigations. An FBI agent made a similar remark in response to a question asked by Terry during cross-examination.

At the threshold, we make a distinction between the evidence which the government was allowed to adduce during its case in chief, and those references which simply came out during the course of the trial. We consider each reference separately.

(1) Peeler's taped self-incriminating statements.

As a general rule, in jury trials, evidence of a criminal defendant's prior misconduct is inadmissible during the prosecution's case in chief for the purpose of showing the accused's bad character or criminal propensity. *United States v. Davis,* 707 F.2d 880, 884 (6th Cir.1983); *United States v. Ailstock,* 546 F.2d 1285, 1289 (6th Cir.1976). However, evidence of a defendant's prior misconduct may be admitted to show motive, intent, absence of mistake or inadvertence, opportunity, preparation or knowledge, *United States v. McFadyen-Snider,* 552 F.2d 1178, 1183 (6th Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *Ailstock,* 546 F.2d at 1289; *Fed.R.Evid.,* 404(b), as long as the acts are similar in nature and close in time to the acts for which the defendant is being prosecuted. *United States v. Reed,* 647 F.2d 678, 686 (6th Cir.), *cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981).

In reviewing the admission of evidence challenged under Rule 404(b), we must make two determinations. First, we decide whether the evidence was admissible for any proper purpose. If we conclude there was a proper basis for admission, then we consider whether the probative value of the evidence outweighed its potential for prejudice. Regarding this latter consideration, the standard of review on appeal is whether it was an abuse of the trial court's discretion to admit the evidence. *United States v. Dabish,* 708 F.2d 240, 242 (6th Cir.1983), *quoting, United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982).

The trial court found that Peeler's statements about his involvement in other criminal activities were admissible under the exceptions in Rule 404(b); specifically, to show knowledge and absence of mistake. We agree. Further, Peeler's statements concerned acts which were similar to those for which he was prosecuted, and which occurred during the same general time frame. The probative value of the evidence outweighed its potential prejudicial effects. There was no abuse of discretion in the admission of this evidence.

(2) Davis' statements about his association with Peeler.

The testimony about the explosion of Davis' boat, which Peeler had been on at the time, was elicited in an attempt to rebut Davis' denial that he knew Peeler well. We think the testimony was too obscure to implicate Peeler in an insurance fraud, as Peeler contends. The testimony was, at best, irrelevant and the line of inquiry was inartful, but we cannot say that the testimony seriously prejudiced Peeler's right to a fair trial. Where, after an examination of the record, we do not believe that an error affected the substantial rights of the defendant, the defendant will not be entitled to a new trial. *Kowalchuk*, 176 F.2d at 878; *Fed.R.Crim.P.* 52.

(3) The officer's statements that Peeler was on parole, was a convicted felon and consorted with felons and; the FBI agent's and officer's statements that they had been at Terry's workplace during the course of other investigations.

At the outset, it should be noted that this court, consistently and repeatedly, has condemned the introduction of prior criminal convictions when the defendant does not testify at trial and the defendant's character is not otherwise in issue. *See e.g., Feroni*, 655 F.2d at 711–12; *Reed*, 647 F.2d at 686; *Ailstock*, 546 F.2d at 1290; *United States v. Blanton*, 520 F.2d 907, 910 (6th Cir.1975); *United States v. Wells*, 431 F.2d 432, 433 (6th Cir.), *cert. denied*, 400 U.S. 967, 91 S.Ct. 380, 27 L.Ed.2d 388 (1970); *United States v. Rudolph*, 403 F.2d 805, 807 (6th Cir.1968). A criminal defendant who chooses not to testify at trial is entitled to a presumption of innocence. One sure way to destroy that presumption is for a seasoned officer to interject an "inadvertent" remark about a defendant's criminal history. We cannot accept the government's characterization of these types of remarks as "inadvertent", and regardless, the "touchstone of prejudice is not the motive of the one who introduces the testimony; rather, it is the effect of such testimony upon the jury." *Ailstock*, 546 F.2d at 1290. Further, if the government took appropriate caution to instruct its witnesses before trial, these types of remarks would occur with less frequency. It is irresponsible, at best, for a seasoned law enforcement officer to try to jeopardize a criminal defendant's right to a fair trial. However, each of these types of cases must be decided on the basis of its unique facts. *Wells*, 431 F.2d at 433–34.

Our role on appeal is to review the record as a whole and determine whether these errors so adversely affected the rights of the defendants as to compel reversal. If not, then we must determine whether the exercise of our supervisory powers require, as a matter of sound judicial administration, the deterrent therapy of a new trial. *Reed*, 647 F.2d at 687.

We find that the statements made by the police officer and FBI agent, about other investigations and Terry's place of business, were objectional, uncalled for, and are definitely not sanctioned by this Court, but they were not so prejudicial as to deny Terry's right to a fair trial. We note that: counsel declined the trial court's offer to give a curative instruction to the jury following the FBI agent's testimony; neither witness made a direct reference to criminal activity and, finally; the statements were, in and of themselves, not of major import. This is true especially when the statements are compared with the other evidence adduced against Terry at trial. The government produced the testimony of an accomplice who implicated Terry, Terry made self-incriminating remarks during a conversation which was taped, and Peeler, a co-conspirator, made incriminating statements regarding Terry during his taped

conversation with Harrill. Terry failed to rebut the inferences raised by this evidence.

 The statements which the police officer made about Peeler's parole status and previous conviction are cause for greater concern. However, we have reviewed the record carefully and we find that the evidence of Peeler's guilt was overwhelming. First, Harrill, an accomplice, testified against Peeler. Second, Harrill's testimony was corroborated by the testimony of a government agent. Finally, Peeler's self-incriminating statements were preserved on tape and heard by the jury. We have read the transcript of the tape. When taken with all the other evidence, the tape was sufficient to destroy the presumption of innocence. Thus, we cannot say that the officer's remark was prejudicial enough to warrant a new trial. Nor do we think that, in this case, any purpose would be served by ordering a new trial.

However, in no way do we intend that our decision be construed as an approval of the conduct displayed by the officer in this case. Given a different factual situation, this type of conduct would not only be intolerable, it would be a basis for reversal.

Affirmed.