974 F.2d 1339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Boyce "Bobo" BRANNON, Defendant-Appellant,
 No. 92-5002.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1992.
 
 Before MERRITT, Chief Circuit Judge, and MILBURN and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Boyce Brannon, appeals his conviction and sentence for conspiracy to manufacture methamphetamine. 21 U.S.C. §§ 841(a)(1); 846. We affirm the conviction but, finding there was insufficient evidence to hold Brannon accountable for 200 pounds of methamphetamine, we remand for a new sentencing hearing.
 
 I.
 
 2
 Brannon first challenges the trial court's refusal to strike the testimony of DEA Special Agent Kelly Goodowens as unsupported by personal knowledge. Fed.R.Evid. 602. Goodowens testified that on May 9, 1991, as part of a surveillance team, he saw Brannon and his two co-conspirators, Frank Taylor and Melvin Taylor, meet at Mel's Diner. The three then got into Frank Taylor's van and drove to a warehouse where the agents believed they were storing laboratory equipment. The trio returned to the diner; Brannon and Frank Taylor then left together.
 
 
 3
 Goodowens further testified that Melvin Taylor was seen driving back to the warehouse, packing up the laboratory equipment, and heading to his house, where another surveillance crew had been established. Once there, he loaded the equipment into a yellow rental truck. Agents then executed a search warrant on Melvin Taylor's home and seized the equipment. All three conspirators were eventually arrested.
 
 
 4
 Defense counsel objected to Goodowens' testimony when he learned, during cross-examination, that the agent was present only at Mel's Diner and not at the warehouse.[1] Other agents had observed the movements at the warehouse from a post set up on a nearby schoolground. The judge overruled counsel's request that the testimony be stricken.
 
 
 5
 We find that even if the testimony was improper under Rule 602 its admission constituted harmless error. Fed.R.Crim.P. 52(a). After his arrest, Brannon gave a detailed statement to Agent Goodowens--recounted by Goodowens at trial--that corroborated the surveillance teams' May 9 observations. Brannon had admitted, among other things, that he and Frank Taylor had been involved in the manufacture of 70 pounds of methamphetamine the previous winter and that, having renewed his association with Melvin Taylor, he had helped move the equipment to the Bradley County area and was attempting to gather all the necessary chemicals and equipment to begin the manufacturing once again.
 
 
 6
 Significantly, Brannon had also confessed that on May 9 he and Melvin had visited the warehouse to show Frank where the equipment was currently stored and that, sharing Brannon's fear that Frank would abscond with the equipment, Melvin moved the equipment to his own residence. Melvin and Brannon were planning to move the equipment back down to Georgia the next day. Melvin Taylor's trial testimony corroborated all these events.
 
 
 7
 Given this other evidence, we cannot say that any potential impropriety in Goodowens' testimony "substantially influenced or swayed the jury's decision." United States v. Ismail, 756 F.2d 1253, 1261 (6th Cir.1985). Even without Goodowens' testimony regarding the defendant's actions at the warehouse on May 9, the evidence that he had gone to the warehouse with the Taylors that day was "overwhelming," as was the evidence of Brannon's guilt of the charged offense. United States v. Terry, 729 F.2d 1063, 1071 (6th Cir.1984).
 
 II.
 
 8
 We also reject Brannon's claim that the court abused its discretion in admitting evidence regarding the analysis of chemical samples taken from the glassware and other equipment seized during the May 9 search of Melvin Taylor's house and the rental truck. The chemist testified that she found solvents, "cutting agents," and substances which, when combined with others, will produce methamphetamine. She also stated that the size of the flasks, along with the "cookbook" explaining how to manufacture methamphetamine, indicated a "large scale" operation. (App. at 132; 144-45). Brannon argues that the government failed to establish the requisite chain of custody of the samples, but the record reveals that this claim is groundless.
 
 
 9
 The forensic chemist who performed the analysis testified that on May 13 she travelled to Chattanooga from her DEA laboratory in Florida at the request of Agent Goodowens. There, she helped unload and unpack the items from the rental truck; at trial, she identified those items in photographs admitted earlier. The chemist also explained that the samples, each with its own identifying number recorded on a DEA form, were then sent back to her Florida laboratory by registered mail. DEA Agent Ken Poteet had mailed the samples at the direction of Agent Goodowens. Brannon's sole challenge appears to be that the chemist did not mail the samples herself.
 
 
 10
 We find no abuse of discretion in the admission of the chemist's testimony. Contrary to Brannon's contention, the evidence relating to chain of custody amply sufficed "to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901. Any remaining doubts about authentication were to be considered by the jury in assessing the weight of the chemist's testimony. Further, defense counsel's own trial strategy suggests that there were few such doubts. On his own motion, counsel introduced the laboratory reports documenting the results of the testing and used the reports to conduct an extensive cross-examination of the chemist.
 
 III.
 
 11
 We also find no fault in the jury instructions. Brannon claims error in the court's refusal to instruct the jury as to the base offense level and precise range of imprisonment faced by Melvin Taylor and the sentence reduction he could receive for assisting the government by testifying against Brannon. (App. at 11). Brannon argues that the jury could not accurately assess Taylor's credibility without this specific information.
 
 
 12
 The court's refusal to give this instruction was based on the concern that Taylor and Brannon were charged with the same offense and, as the court stated: "It's not proper for the jury to consider anything about the possible sentences in this case." (App. at 147). The court also assured defense counsel that the credibility instruction to be given would sufficiently apprise the jury of Taylor's cooperation agreement and that they should consider whether this fact influenced his testimony. The instruction ultimately given did so inform the jury and, additionally, warned them to "consider [Taylor's] testimony with more caution than the testimony of other witnesses." (App. at 172).
 
 
 13
 Given these detailed admonitions, Brannon has failed to demonstrate that his requested charge was "not substantially covered by the actual jury charge." United States v. Sassak, 881 F.2d 276, 279 (6th Cir.1989).
 
 IV.
 
 14
 Brannon also raises several objections to his sentence.[2] The first claimed error is the court's decision to sentence Brannon on the basis of 200 pounds of methamphetamine. This amount, coupled with his career offender status, resulted in a sentence of 360 months (from a range of 360 months to life).
 
 
 15
 "A district court's decision on the amount of [controlled substance] a defendant is to be held accountable for is a finding of fact which must be accepted by a court of appeals unless clearly erroneous." United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990). As is evident from the following analysis, however, this traditional statement of the applicable standard does not fully articulate the nature of our review in a case such as this.
 
 
 16
 Section 2D1.4 of the sentencing guidelines provides that, if a defendant is convicted of a conspiracy involving a controlled substance, the offense level is to be the same as if the object of the conspiracy had been carried out. Application note 2, however, directs the judge to "approximate the quantity of the controlled substance" where, as here, there was no seizure of the substance charged in the offense. The approximation may be based on the "size or capability of any laboratory involved."
 
 
 17
 In this case, Melvin Taylor testified that he, Frank Taylor, and defendant Brannon had planned to manufacture 200 pounds of methamphetamine.[3] He also stated that he had spent $80,000 during the preparation stages, lured by Frank Taylor's projections that the venture would repay him $200,000. Without analyzing whether this start-up money could be used to determine the amount of chemical ingredients purchased or the amount of expected profits, the court simply stated that this evidence supported a finding that Brannon was accountable for 200 pounds. The court also said it relied on "the evidence of the expert witness [chemist] from Florida." (App. at 200).
 
 
 18
 Brannon emphasizes that only four pounds (of very poor quality) were ever produced, and argues that their laboratory was incapable of manufacturing 200 pounds. He correctly notes that the Florida chemist never specifically stated that the chemicals and laboratory equipment could yield 200 pounds of methamphetamine. The judge did not contend that the chemist did so state; he was in all likelihood referring to the chemist's opinion that the equipment was of the sort used in a "large scale" operation. Although the court was not faced with a choice between several plausible estimates, as was the district court in Walton, that case still requires us to determine whether the finding that Brannon and his cohorts had the capacity to produce 200 pounds was supported by a preponderance of the evidence. Walton, 908 F.2d at 1302.
 
 
 19
 A survey of other cases affirming drug-quantity findings under 2D1.4 reveals that the district court in this case lacked a sufficient basis for sentencing Brannon on the basis of 200 pounds. See, e.g., United States v. Beshore, 961 F.2d 1380, 1383 (8th Cir.) (DEA chemist testified that, given the amount of precursor chemicals found and the "valid recipe" seized, the defendants could have produced 400 grams of methamphetamine), petition for cert. filed, No. 92-5190 (U.S. July 17, 1992); United States v. Short, 947 F.2d 1445, 1456-57 (10th Cir.1991) (quantity based on DEA chemist's testimony regarding the production capacity of defendant's 22-liter flask and heating mantle), cert. denied, 112 S.Ct. 1680 (1992); United States v. Fulcher, 943 F.2d 824 (8th Cir.1991) (DEA chemist testified not only that the laboratory was capable of producing large quantities, but specifically explained how the 100-kilogram estimate was calculated from the amount of the "least abundant precursor chemical" found in defendant's laboratory). In the present case, there was no such specific testimony regarding the capacity of the laboratory, but only a generalized opinion that theirs was a "large scale" operation.
 
 
 20
 We therefore REMAND for a more precise inquiry into the quantity of methamphetamine for which the defendant properly may be held accountable.[4]
 
 
 
 [1]
 The transcript reveals that defense counsel's objection was based on a belief that Agent Goodowens had not been present at any of the surveillance sites on May 9. (App. at 50). What Goodowens had said, however, was that he was at Mel's Diner but not at the warehouse (and neither, presumably, was he at Melvin Taylor's house)
 
 
 [2]
 Brannon also complains of the court's refusal to allow defense counsel to argue to the jury that the government had originally charged him with attempt to manufacture methamphetamine and that a superseding indictment charged him only with conspiracy to manufacture that substance. Brannon insists that this refusal impeded the defense by thwarting his ability to argue inconsistencies in the government's case. He fails, however, to demonstrate why this is so; without this elaboration, we cannot assess his argument
 
 
 [3]
 Defense counsel claims that Melvin Taylor spoke only of the conspirators' intention to manufacture "amphetamine." The transcript clearly shows that Taylor did not distinguish between amphetamine and methamphetamine, but used these terms interchangeably. In addition, the prosecution used the word "methamphetamine" when asking Melvin Taylor about the number of pounds they planned to make. (App. at 66). The court specifically found that the conspiracy involved the planned production of methamphetamine "and not some other chemical." (App. at 200). We therefore reject all of Brannon's arguments calling for calculation of a sentence based on quantities of amphetamine
 
 
 [4]
 Brannon's final argument, that the court should have departed downward based on defendant's age and the (alleged) overrepresentation of his criminal history, is not cognizable in this appeal, as the court imposed sentence within the guideline range and was clearly aware of its discretion to make a downward departure (app. at 203; 206). United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990)