NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0874n.06

Case No. 13-4365

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Nov 21, 2014 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| THEODORE R. HARMON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE: GUY, ROGERS, DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Theodore R. Harmon ("Harmon")

appeals his jury conviction and sentence pursuant to 18 U.S.C. § 2242(b). 18 U.S.C. § 2242(b)

criminalizes an attempt to persuade, coerce, or entice a minor to engage in sexual activity while

utilizing means of interstate commerce. Harmon pled not guilty to a charge under this statute,

but was convicted by a jury and subsequently sentenced to 168 months' incarceration, to be

followed by lifetime supervised release. Harmon's appeal concerns both his conviction and

sentence. First, Harmon alleges that the district court abused its discretion in admitting evidence

of his statements that he had prior sexual experience with underage girls, and also in admitting

evidence of an overnight bag that was found in his car at the time of his arrest. Second, Harmon

challenges the sufficiency of evidence proving each element of the crime beyond a reasonable

doubt, and specifically argues that the Government failed to show that Harmon had the intent to entice. Third, Harmon argues that the district court erred in giving Jury Instruction 20, which clarified the meaning of the words "persuade, induce, entice, or coerce" as used in the statute, because the instruction was allegedly not supported by law and misled the jury. Fourth, Harmon contends that the district court committed procedural error in sentencing because the court did not provide a specific explanation for imposing a life term of supervised release. For the reasons explained below, we **AFFIRM** Harmon's conviction and the district court's sentencing order.

## I.

In 2012, the Department of Homeland Security ("DHS") began investigating Harmon after he posted a personals ad on the website www.motherless.com, seeking an 18- to 24-year-old woman for a sexual encounter involving a dominance and submission relationship and daddy-daughter role play. Michael Spadafora ("Agent Spadafora"), an undercover DHS agent based in Florida, responded to Harmon's ad while posing as the father of a fictitious 14-year-old girl named Brooke. Agent Spadafora asked whether Harmon was "interested in young" and would like to meet him and his "daughter" on their upcoming trip to Ohio. PageID 629-30. Harmon responded that he had "had sex with a lot of underage girls . . . but they were all willing and loved it." PageID 653. The following week, Harmon and Agent Spadafora communicated through emails, chatrooms, text messages, and phone calls. In the course of those communications, Harmon expressed concern about encountering undercover police officers and mentioned that he had been caught in a sting operation previously and feared being caught again. Harmon also advised Agent Spadafora how to disguise communications about having sex with minors in order to avoid being caught.

Though he was communicating only with Agent Spadafora, Harmon was very interested in "Brooke's" thoughts, preferences, and feedback. For example, Harmon inquired about "Brooke's" sexual preferences and discussed various sex acts he wanted to perform with her. Harmon asked for pictures of "Brooke" in her underwear and sent a nude photo of himself to Agent Spadafora to show his "daughter." Harmon repeatedly asked about "Brooke's" response to his photo and whether she liked it. He also asked whether "Brooke" drank alcohol and learned that "father" and "daughter" both liked Coors Light beer, which Harmon offered to bring when they met. Harmon asked Agent Spadafora if he should take "Brooke" out to dinner and spend a whole night with her. Harmon reassured Agent Spadafora that his "daughter" would be in experienced, safe, and disease-free hands.

Harmon eventually arranged a meeting for March 14, 2012, with Agent Spadafora at the Knights Inn motel in Rossford, Ohio. On the day of the meeting, Agent Spadafora and Harmon exchanged text messages and it appeared as though the meeting would fall through when Agent Spadafora texted Harmon, "[I]t's cool if you're not coming. I may take Brooke to Cleveland tonight." PageID 672. In response, Harmon asked Agent Spadafora, "Can I call and talk to her?" PageID 672-73. Agent Spadafora made a recorded phone call with Harmon, during which Harmon spoke with a female undercover officer portraying the 14-year-old Brooke. Reassured that the plan was on track, Harmon arrived at the motel and was arrested. A search of the trunk of his vehicle revealed an 18-pack of Coors Light beer, and a black overnight bag containing condoms, sex toys, a blindfold/sleeping mask, ropes, knotted sheet strips, towels, lotion, and hair clips. Harmon's cell phone was also seized. It contained call logs and text messages relating to the meeting at the motel.

On April 4, 2012, an indictment was returned charging Harmon with using a facility or means of interstate commerce to attempt to knowingly persuade, induce, or entice an individual, who he believed was 14 years old, to engage in sexual activity under circumstances which would constitute a criminal offense in the State of Ohio, in violation of 18 U.S.C. § 2422(b).

Harmon pled not guilty and moved to suppress statements he made to officers when arrested. An evidentiary hearing was held, and the court denied the motion to suppress. Harmon subsequently filed a motion to dismiss the indictment, which was denied. Harmon then filed a motion in limine asking that any reference to a prior criminal record be excluded, which the Government agreed to. He also asked the court to exclude the contents of the bag that was seized at the time of his arrest. The court denied the motion in limine without prejudice.

Following a jury trial held on May 29 and 30, 2013, Harmon was found guilty of the sole count charged. The presentence report ("PSR") noted that the mandatory minimum term for a conviction under 18 U.S.C. § 2422(b) is from ten years up to life imprisonment, followed by supervised release of five years, up to a life term. The PSR calculated Harmon's Total Offense Level at 30 and his Criminal History Category at IV, corresponding to a guideline range of 135 to 168 months imprisonment. On November 6, 2013, the district court sentenced Harmon to 168 months imprisonment, followed by a life term of supervised release.

On November 7, 2013, a timely notice of appeal was filed in this Court. Subsequently, Harmon filed a separate pro se notice of appeal on November 15, 2013, which was dismissed as a duplicate on November 26, 2013. We consider each of Harmon's arguments in turn.

## II.

Harmon's first argument is that the district court improperly admitted (1) evidence of his statements that he had prior sexual experience with underage girls, and (2) contents of the

overnight bag found in his car at the time of his arrest. We review the admissibility of evidence for abuse of discretion. *United States v. Cecil*, 615 F.3d 678, 688 (6th Cir. 2010); *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006).

A.

In the course of his communications with Agent Spadafora, Harmon stated that he had "had sex with a lot of underage girls . . . but they were all willing and loved it." PageID 653. Harmon also stated that he had sex with an underage girl for six months with the consent of her mother, and that he "had a great sub/slut. She was 13 but moved. I used and trained her for over a year." PageID 643. Harmon now argues that these statements were improperly admitted as prior bad acts in violation of Rule 404(b).

The record shows that Harmon's statements about prior sexual experience with minors were admitted as evidence of Harmon's state of mind with respect to the charged offense and not as prior bad acts. When Harmon's statements were presented at trial, Harmon's counsel objected on the basis of Rule 404(b), arguing that the evidence dealt with prior contacts and had nothing to do with the instant case. The trial judge overruled the objection, initially characterizing the evidence in question as statements against interest. However, when the Government replied that the evidence was strictly a statement that was relevant to Harmon's state of mind, and not Rule 404(b) evidence, the trial judge agreed. Harmon's argument on appeal overlooks the trial court's full discussion on the admissibility of his statements and focuses instead on specific excerpts of the trial transcript, taken out of context. A trial judge is not required to state a specific rule of evidence for an admissibility ruling. It is common practice for trial judges to overrule an objection without referring to a specific rule.

In support of his argument, Harmon cites *United States v. Terry*. 729 F.2d 1063 (6th Cir. 1984). In *Terry*, a criminal defendant, in a tape-recorded conversation with a Government witness, "made several references to his involvement in other criminal activity," discussing, amongst other things, stolen property and his nervousness about getting arrested. *Terry*, 729 F.2d at 1069. In *Terry*, we reviewed the admission of the defendant's statements under Rule 404(b). *Id*. However, in *Terry*, unlike this case, there was no allegation that the defendant was committing a crime or attempting to commit a crime. Further, in *Terry*, the statements were offered by the Government merely to show knowledge and absence of mistake. *Id*. In the instant case, the challenged statements were substantive evidence of criminal intent.

The Government has effectively argued that the statements were admissible to show Harmon's intent to persuade a father, whom he had never met, into allowing Harmon to have sex with his daughter. Thus, Harmon told the "father": (1) he had had sex with a minor before; (2) he had familiarity with different underage girls; (3) he never hurt them; (4) he was an experienced "trainer" of "sub/sluts" and could help train Brooke; and (5) he was for real. Whether the statements were true or not is insignificant. What is significant is that by making these statements Harmon attempted to persuade and entice Agent Spadafora and his "daughter" to come to Ohio for a sexual encounter. *Terry* is therefore distinguishable from the instant case. Based on the record, Harmon's statements were properly admitted as evidence of his criminal state of mind. Accordingly, Rule 404(b) does not preclude admission. The trial judge did not err by overruling the Rule 404(b) objection. After overruling the Rule 404(b) objection, the trial judge properly found that the probative value of the statements outweighed the risk of unreasonable prejudice and held that the statements were therefore admissible under Rule 403.

Harmon argues, for the first time on appeal, that his statements were improperly admitted under Rule 403 because of their highly prejudicial nature. When a "party objects to the submission of evidence on specific grounds in the trial court, but on appeal the party asserts new grounds challenging the evidence," his contention on appeal will prevail only if the trial court's evidentiary decision was plainly erroneous, thus affecting the party's substantial rights and resulting in a miscarriage of justice. *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989) (citing *United States v. Johnson*, 722 F.2d 407, 409 (8th Cir. 1983) (per curiam)). Therefore, we review Harmon's objections to admissibility under Rule 403 using a plain error standard. "Plain errors are limited to those harmful ones[,] so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *Evans*, 883 F.2d at 499 (citing *United States v. Causey*, 834 F.2d 1277, 1281 (6th Cir. 1987), *cert. denied*, 486 U.S. 1034 (1988)).

In support of his argument, Harmon cites two cases in which highly prejudicial evidence of a defendant's "other-act" and prior conviction were admitted under Rule 404(b). *See United States v. Matthews*, 440 F.3d 818, 828 (6th Cir. 2006), *United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010). Because Harmon's statements were not admitted as other acts under Rule 404(b), but rather as evidence of his state of mind, *Matthews* and *Jenkins* are inapposite. Given the trial court's generally broad discretion in admitting potentially prejudicial evidence under Rule 403, *see United States v. Zipkin*, 729 F.2d 384, 389-90 (6th Cir. 1984), the district court's decision to admit this evidence was not plain error. *Evans*, 883 F.2d at 500.

B.

Harmon also argues that the district court erred by admitting the contents of an overnight bag found in his car when he was arrested upon arrival at the motel. We review a district court's

evidentiary determinations for abuse of discretion. *United States v. Wheaton*, 517 F.3d 350, 364-65 (6th Cir. 2008). In reviewing the district court's Rule 403 balancing for abuse of discretion, and in "giving the district court decision broad discretion," we "'look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "In order to establish that the evidence should be excluded, it is not sufficient to suggest that the 'legitimate probative force of the evidence' would result in damage to the defendant's case, but rather that the evidence would 'tend[] to suggest [a] decision on an improper basis.'" *Poulsen*, 655 F.3d at 509 (quoting *Bonds*, 12 F.3d at 567).

Harmon's overnight bag contained condoms, sex toys, a blindfold/sleeping mask, ropes, knotted sheet strips, towels, lotion, and hair clips. The district court found that the contents of the bag were generally relevant and therefore admissible under Rule 402, and that the probative value outweighed the prejudicial value under Rule 403. Harmon argued that these items were not discussed in the course of communications, were not illegal to own, and had never been linked with the offense of which he was convicted. At trial, the district court overruled the defense's objection and held that the contents of the bag directly related to what Harmon had in mind and what he anticipated doing by coming to the motel for the arranged meeting. The district court found a sufficient nexus between the contents of the bag and what the Government had to prove under § 2422(b), namely, Harmon's state of mind. The district court acknowledged that "an attempt is not an easy thing to prove." PageID 680. However, because it found the contents were part of the ongoing course of conduct underlying the crime with which Harmon was charged, the district court held the contents were admissible under Rule 402.

On appeal, Harmon cites *United States v. De Oleo* for the proposition that a limiting instruction should have been used to blunt any claim of unfair prejudice to a defendant. 697 F.3d 338, 344 (6th Cir. 2012). However, *De Oleo* makes clear that limiting instructions are but one factor that a district court can consider in conducting a Rule 403 balancing test. *Id.* Nothing in the record demonstrates that the district court abused its discretion by finding that the probative value of the evidence outweighed the prejudicial effect, or by not giving a limiting instruction.

### III.

Harmon's second argument on appeal is that there was insufficient evidence to support his conviction for using a facility or means of interstate commerce in an attempt to persuade or entice a minor to have sex, in violation of 18 U.S.C. § 2422(b). Specifically, Harmon argues that the Government failed to show intent to entice.

We review, de novo, a district court's resolution of a challenge to the sufficiency of the evidence supporting a criminal conviction to determine whether, after "'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original)). In a review for sufficiency, we must draw all available inferences and resolve all issues of credibility in favor of the jury's verdict. *Wheaton*, 517 F.3d at 365. Finally, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

"A person can be convicted of violating 18 U.S.C. § 2422(b) if he or she knowingly uses interstate commerce to persuade, induce, entice, or coerce any individual who has not attained

the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." *United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011) (internal quotation marks omitted). The First Circuit has clarified that

> Section 2422(b) criminalizes an intentional attempt to achieve a mental state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor. The crime of attempt requires an intention to commit the substantive offense—here, critically, to persuade, induce, entice and coerce—and a substantial step towards its commission. A substantial step is less than what is necessary to complete the substantive crime, but more than mere preparation.

*United States v. Berk*, 652 F.3d 132,140 (1st Cir. 2010), *cert. denied*, 132 S. Ct. 1650 (2012) (internal quotation marks and citations omitted).

It is undisputed that Harmon used a means of interstate commerce when he placed an advertisement in the classified section of an internet website, www.motherless.com, and used e-mail, Yahoo instant messaging, text messages, and the telephone to communicate with Agent Spadafora. It is also undisputed that if Harmon had engaged in sexual activity with a 14-year-old, he could have been charged with a criminal offense under Ohio law. Therefore, Harmon's argument focuses only on the alleged insufficiency of evidence to show that he possessed the required intent to commit the crime of persuading, inducing, enticing or coercing, or that he had taken a substantial step in furtherance of that crime.

## A.

First, Harmon argues that he had no intention of knowingly persuading an individual under the age of 18 to engage in sexual activity and that his conviction oversteps the boundaries of the statute. Harmon claims that he was pre-empted from ever having to persuade or entice a minor because Agent Spadafora offered him a minor to engage in a sexual encounter in response to Harmon's internet posting seeking a sexual encounter with females between 18 and 24 years

of age. However, it is possible to persuade, induce, entice, or coerce a minor to engage in sexual activity even if the minor had a predilection to do so.

Evidence of Harmon's intent to persuade, induce, or entice is not, as Harmon argues, limited to his initial interaction with Agent Spadafora, in which the latter offers Harmon the possibility of a sexual encounter with his 14-year-old "daughter." Rather, the intent to persuade, induce, or entice was ongoing. Harmon repeatedly asked Agent Spadafora about what specific sex acts his "daughter" enjoyed, conceivably so that he could persuade and entice a minor by first learning what sexual acts she preferred, then offering to perform them. Additionally, Harmon sent a nude photo of himself to Agent Spadafora *for the specific purpose of showing it to his "daughter,"* and repeatedly asked Agent Spadafora what her reaction was. Harmon reassured Agent Spadafora that his "daughter" would be in experienced hands and that Harmon was drug and disease-free. To seal the deal, Harmon offered to provide, at the meeting, the type of alcoholic beverage that the father-daughter duo liked. When it seemed as though the pre-arranged plans for a meeting would fall through, Harmon asked to speak with the "daughter" directly, presumably so he could reassure, encourage, or induce her not to back out. Harmon's own words and actions suggest that he did not consider the sexual encounter with "Brooke" to be a fait accompli at the moment her "father" volunteered it. Instead, he actively pursued the opportunity, even when it seemed as though it would slip away. Evidence of Harmon's intent is pervasive throughout the course of his communications with Agent Spadafora, which go beyond passive acquiescence, and culminates in his arrival at the pre-arranged meeting place, with a bag of condoms, sex toys, and beer.

The evidence also proves that Harmon's intent was not limited to persuading Agent Spadafora but extended to persuading "Brooke" *through* Agent Spadafora. For example, a jury

may have understood Harmon's sending of a nude photo to Agent Spadafora and the subsequent inquiries about "Brooke's" reaction, as Harmon's effort to entice the girl directly with the picture. A jury may also have found that Harmon's repeated requests to communicate directly with "Brooke" were attempts to get Agent Spadafora to permit Harmon to entice the girl.[1]

Harmon cites *United States v. Nitschke*, 843 F. Supp. 2d 4, 13 (D.D.C. 2011), in support of his argument that he lacked intent. In *Nitschke*, the defendant told an adult in an online chat that he would like to join him in sex that the adult had already pre-arranged with the minor, and the court found that the defendant lacked intent to persuade or entice under § 2422(b). In so doing, the court distinguished the facts in *Nitschke* from a number of cases where the "defendant's communications through the adult intermediary sought to cause the assent of the minor to the defendant's proposals." *Id.* at 14. The court stated that,

> [t]he focus is on the intent of the defendant through his communications to influence the child's assent . . . [the defendant] never sought [the adult intermediary's] help in procuring the fictitious minor. He did not ask [the adult intermediary] to pass along any communication whatsoever to the minor. He did not make any promises to the minor through [the adult intermediary]. He did not offer any money or anything else of value, and he did not invite [the adult intermediary] or the minor anywhere.

*Id.* In contrast, Harmon *did* ask Agent Spadafora to pass along communications to his minor "daughter," including a nude photograph of himself, and asked repeatedly whether Agent Spadafora had shown it to her: "Did you get my nude pic? . . . Did you get my pic? . . . And let me know if she likes . . . Did she see my pic? . . . And is she okay with me?" PageID 647-48,

---

[1]These were some of the actions cited by the Seventh Circuit for rejecting a defendant's argument that he intended to persuade only an adult intermediary and not a minor. *United States v. McMillan*, 744 F.3d 1033, 1037 (7th Cir. 2014) *cert. denie*d --- S. Ct. ----, 2014 U.S. LEXIS 5639 (Oct. 6, 2014) (finding that the defendant's offer to send a picture of his penis to an adult intermediary "father" could have been understood by the jury as an effort to entice the minor "daughter" directly with the picture; a question to the "father" about whether he had discussed certain plans with his "daughter" and a request to talk to the "daughter" directly could also be seen as an attempt to get the "father" to permit the defendant to entice the "daughter.")

650. Also, unlike the defendant in *Nitschke*, Harmon *did* make promises, by guaranteeing that he was drug and disease-free, he *did* offer alcohol to both Agent Spadafora and the minor, and he *did* arrange to meet with Agent Spadafora and the minor at a specific location in his home state. Additionally, Harmon repeatedly sought to communicate directly with the minor: "Can I chat with her?" . . . What's her [Y]ahoo name? . . . I will send her an e-mail." PageID 658. The evidence shows that Harmon's communications through the adult intermediary (Agent Spadafora) sought to cause the assent of the minor ("Brooke") to Harmon's proposals. Therefore, applying the *Nitschke* analysis, we find that Harmon had the requisite intent.

B.

Harmon concurrently argues that he was treating the encounter as fantasy and had no intent to actually engage in a sexual encounter with a minor. It is well-established, however, that 18 U.S.C. § 2422(b) criminalizes intent to persuade, induce, entice, or coerce a minor and is not concerned with a defendant's intent to actually engage in sex with a minor. *See United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (holding that the intent to entice and the intent to have sex "are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade"); *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) (holding that "Section 2422(b) . . . was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423 [which criminalizes an intent to engage in illicit sex].") Further, Harmon's criminal intent as it pertains to persuading a minor may be proven through circumstantial evidence. *Wheaton*, 517 F.3d at 364. In any case, the Government presented sufficient evidence, such as the overnight bag, and Harmon's physical presence at the motel, to show that Harmon was not merely fantasizing, but actually intended to meet a 14-year-old and persuade her to engage in sexual activity.

C.

Harmon also challenges the sufficiency of evidence to prove that he took a substantial step toward the commission of the substantive offense of persuading, inducing, enticing, or coercing a minor to engage in sexual activity. Evidence presented included specific statements concerning the logistics of the meeting, including the time and place, and other necessary arrangements, such as planning time off from his work schedule. Harmon asked Agent Spadafora to text him when he and his "daughter" arrived, and to let him know where they were staying, including the room number, and at what time they should meet and where. In addition to making these detailed plans, Harmon actually came to the motel with an overnight bag containing condoms, sex toys, a blindfold/sleeping mask, ropes, knotted sheet strips, towels, lotion, hair clips, and an 18-pack of Coors Light beer. The fact that Harmon actually showed up at the site where he was supposed to have sex with a 14-year-old girl, in possession of these items, belies his contention that his internet ad and communications with Agent Spadafora were merely fantasy. Harmon's arrival at the motel was a substantial step that went beyond "mere preparation." Accordingly, it satisfies the requirement for an attempt under 18 U.S.C. § 2422(b) and supports the jury's verdict.

To the extent that Harmon argues that he did not believe that the individual in question was actually a minor because his original internet ad was aimed at women in the age range of 18 to 24 years, Harmon's argument is without merit. The evidence presented by the Government includes Agent Spadafora's repeatedly mentioning the age of his fictitious daughter, and Harmon's repeatedly confirming interest in meeting her for a sexual encounter. Additionally, the evidence includes Harmon's own statements of previous sexual encounters with minors, ostensibly to demonstrate that "Brooke" would be in experienced hands. Harmon's

acknowledged awareness of the illegal nature of sexual encounters with minors also indicates that Harmon was aware that "Brooke" was a minor. Harmon's suggestions to Agent Spadafora for disguising his intent to engage in sexual encounters with minors, and Harmon's concerns about being caught in an illegal enterprise, provide further support for this finding. Lastly, the evidence includes a recorded phone conversation in which Harmon spoke with a female crime scene agent playing the part of the 14-year-old daughter, and asked "[W]hat do you want to do if I show up?" PageID 684-85. While this recording may not be unequivocal proof of the intent to meet, it does show that Harmon spoke to someone on the phone and, importantly, that "someone" was believed by Harmon to be a 14-year-old female. Based on the foregoing evidence, a rational trier of fact could have found, beyond a reasonable doubt, that Harmon attempted to knowingly persuade an individual, whom he believed to be a 14-year-old girl, to engage in sexual activity.

IV.

Harmon's third argument on appeal is that the district court erred in issuing Jury Instruction 20, which clarified the meaning of the words "persuade, induce, entice, or coerce" in 18 U.S.C. § 2242(b), because the instruction was not supported by law and misled the jury. Generally, we review challenges to jury instructions under the abuse of discretion standard. *United States v. Russell*, 595 F.3d 633, 642 (6th Cir. 2010). Because Harmon undisputedly failed to object to the instructions at trial, we review the jury instructions only for plain error. *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009) (citing *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009)). To demonstrate plain error, Harmon must show: "(1) an error, (2) that is plain, and (3) that affects his fundamental rights." *Id.* We may reverse the district court "only if the instructions, viewed as a whole, were confusing, misleading, or

prejudicial." *United States v. Kuehne*, 547 F.3d 667, 679 (6th Cir. 2008) (citation and internal quotation marks omitted). We will not reverse an erroneous jury instruction if the error was harmless. *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005).

Harmon argues that Jury Instruction 20, explaining the terms "persuade, induce, entice, or coerce," and specifically the following language, was erroneous:

> The [G]overnment does not have to prove that Mr. Harmon communicated directly with the person he thought to be a minor. Mr. Harmon may be proven guilty even if his communications were with undercover law enforcement officers and no actual minor existed. It is sufficient for the [G]overnment to prove Mr. Harmon attempted to persuade, induce, entice, or coerce a minor by communicating with someone he believed was the minor's parent, guardian, or someone else likely to have influence over the minor, even though that person was an undercover law enforcement officer.

PageID 340. Harmon argues that the phrase "by communicating with someone he believed was the minor's parent who could have influence over the minor" was too broad and that, based on this instruction, the jury could have convicted him for any communication he had with the parent—including non-criminal communication—without analyzing whether Harmon's words or actions were designed to entice a minor.

Harmon's argument takes the phrase out of context and considers it in isolation. We have held that "no single provision of the jury charge may be viewed in isolation; rather, the charge must be considered as a whole." *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). Considering the instructions as a whole, we note that the jury instructions began with a description of the elements of the crime charged, which made it clear that Harmon could not be convicted for having innocent conversations. The next section of the instructions consisted of definitions and included Jury Instruction 20. Thus the purpose of that instruction was simply to

instruct the jury as to the definition of the terms "persuade, induce, entice, or coerce," and not to clarify the elements of the crime.

Harmon also challenges the jury instruction based on a recent decision by the D.C. Circuit in a case where jury instructions defining the requisite intent of § 2422(b) did not comport with its interpretation of the statute. *See United States v. Hite*, 2014 U.S. App. LEXIS 20133, at *25 (D.C. Cir. 2014). However, *Hite* is distinguishable from this case. In *Hite*, the district court instructed the jury that "[d]irect communications with a child" are not necessary for a jury to find a violation of § 2422(b), and that the "[G]overnment must only prove that the defendant believed that he was communicating with someone who could *arrange* for the child to engage in unlawful sexual activity," and also that "the [G]overnment must prove only that the defendant intended to persuade, or induce, or entice, or coerce a minor to engage in illegal sexual activity, or intended to persuade an adult to *cause* a minor to engage in unlawful sexual activity." 2014 U.S. App. LEXIS 20133 at *19. (emphasis in original). The terms "arrange" and "cause" were problematic because they did not capture the "preeminent characteristic of the conduct prohibited under § 2422(b) [which] is transforming or overcoming the minor's will, whether through 'inducement,' 'persuasion,' 'enticement,' or 'coercion.'" *Id.*

Here, Jury Instruction 20 stated: "It is sufficient for the [G]overnment to prove Mr. Harmon attempted to persuade, induce, entice, or coerce a minor by communicating with someone he believed was the minor's parent, guardian, or someone else likely to have *influence* over the minor . . . ." PageID 340. Unlike the terms "arrange" and "cause," the term "influence" *does* encompass the key characteristic of the conduct prohibited under § 2422(b). Indeed "influence" is often used to define the term "induce," which is one of the verbs specified in § 2422(b). *See Hite,* 2014 U.S. App. LEXIS 20133, at **10-11 (*citing* OXFORD ENGLISH

DICTIONARY (2d ed. 1989) (emphasis in original)("induce" is ordinarily defined as "[t]o lead (a person), by persuasion or some influence or motive that acts upon the will," "to lead on, move, influence, prevail upon (any one) *to do* something."); BLACK'S LAW DICTIONARY (6th ed. 1990) ("induce" defined as "[t]o bring on or about, to affect, cause to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (1981) ("induce" defined as "to move and lead (as by persuasion or influence)," "prevail upon," and "to bring on or bring about")). *See also United States v. Lee*, 603 F.3d 904, 915 (11th Cir. 2010) (where defendant did not communicate directly with minors but rather "requested assistance from the one woman who had 'influence and control over [the] daughters,'" their mother).

Moreover, the challenged jury instruction is an accurate representation of the law. The Government cites a line of cases which all stand for the proposition that online efforts to arrange for sexual activity with a child through an adult intermediary violate § 2422(b). *See e.g.*, *United States v. Berk*, 652 F.3d 132 (1st Cir. 2010), *cert. denied*, 132 S. Ct. 1650 (2012); *United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010) (per curiam), *cert. denied*, 131 S. Ct. 1024 (2011); *United States v. Nestor*, 574 F.3d 159 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011 (8th Cir. 2007); *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004); *Laureys*, 653 F.3d 27, 33 (D.C. Cir. 2011). We have held that a trial court has broad discretion in crafting jury instructions and has not abused its discretion, much less committed plain error, in issuing an instruction which accurately reflects the law. *See United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012) (quoting *United States v. Geisen*, 612 F.3d 471, 485 (6th Cir. 2010)).

Accordingly, Harmon has not demonstrated that the district court committed plain error by giving Jury Instruction 20 because the challenged provision has a solid basis in the law, and when viewed as part of a whole, did not confuse, mislead or cause prejudice.

V.

Harmon's fourth argument on appeal is that the district court committed a procedural error by not providing a specific explanation for imposing a life term of supervised release. We generally review sentencing decisions under an abuse-of-discretion standard for procedural error and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). However, because Harmon failed to raise an objection at the time of sentencing, we review only for plain error. *United States v. Vonner*, 515 F.3d 382, 386-87 (6th Cir. 2008). We may reverse for plain error only if an appellant establishes that: (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

Harmon recognizes that the appropriate standard of review is plain error, yet he argues that the district court abused its discretion by imposing a procedurally unreasonable sentence. Notwithstanding Harmon's puzzling shift in standards of review, Harmon is unable to establish that any error, much less a plain error, occurred. The cases he cites also do not suggest that the district court committed plain error in imposing the recommended life term of supervised release due to Harmon's status as a repeat sex offender with a dangerous proclivity for using the Internet to entice minors towards sexual activity.

One case which Harmon cites, *United States v. Inman,* is distinguishable because, unlike in Harmon's case, Inman did not have a criminal history, the offense of conviction involved a lesser degree of concern for future dangerousness, and the district court imposed a life term of

supervised release, which exceeded the joint recommendation of a ten-year term. 666 F.3d 1001 (6th Cir. 2012). Also different is *United States v. Thompson*, another case which Harmon relies on, because there the district court failed to articulate any basis for the defendant's sentence, which included "onerous special conditions" that are absent in Harmon's sentence. 509 F. App'x 449 (6th Cir. 2012).

Harmon's sentence of 168 months of incarceration and a life term of supervised release is consistent with both congressional mandate and Sentencing Commission recommendations. *See United States v. Kennedy*, 499 F.3d 547, 553 (6th Cir. 2007) ("Congress insists that lifetime supervision be available to courts in sentencing sexual offenders" in light of concerns regarding the inadequacy of more limited supervision); U.S. Sentencing Guidelines Manual § 5D1.2(b) (2013) (Policy Statement) ("If the instant offense of conviction is a sex offense…the statutory maximum term of supervised release is recommended.")

Harmon's sentence was also adequately explained, under the circumstances. Because the life term of supervised release was consistent with guideline recommendations, an extensive explanation was not required in this case. *See Rita v. United States*, 551 U.S. 338, 346 (2007). Accordingly, the district court's discussion of the 18 U.S.C. § 3553(a) sentencing factors, which were not restricted to a term of imprisonment exclusively, was sufficient explanation for ordering a life term of supervised release. *See United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) ("[T]he district court in this case engaged in a single consideration of the sentencing factors, which embraced both the incarceration sentence and the supervised release term"); *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012) ("In outlining its reasons for imposing the sentence of incarceration . . . the district court was also outlining the reasons supporting the conditions of

supervised release."). For the foregoing reasons, the district court provided an adequate explanation for imposing a life term of supervised release.

Irrespective of the adequacy of the district court's explanation, Harmon has not shown that the district court committed any error which infringed his substantial rights or seriously affected the fairness, integrity, or public reputation of the proceedings. Again we distinguish *Inman* where an inadequate explanation for a life term of supervised release was held to have affected substantial rights and integrity of proceedings, only after we found that "both the length of supervised release and the conditions imposed are likely more severe than if the district court had followed the correct procedures." *Inman*, 666 F.3d at 1006-07. In Harmon's case, the district court demonstrated familiarity with the PSR and the "'record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 358). Therefore, neither Harmon's rights nor the fairness of the proceedings were affected and the district court committed no error.

VI.

For the foregoing reasons, we **AFFIRM** Harmon's conviction and the district court's sentence.